**Albert Taylor**
17 Vandalia Ave Apt 6E
Brooklyn NY 11239
Altaylorusa1@aol.com
Phone 6464749170

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2023 JUN 14 P 3: 49

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION
Case No.:  23-3295 (JMV)(LDW)
JURY TRIAL DEMANDED
**VERIFIED COMPLAINT and
JURY DEMAND VIOLATION
OF: 42 USC 1983, 1985**

Plaintiff(s),
Albert Taylor
v.
Defendant(s)
CITY OF JERSEY CITY
DEPARTMENT OF CHILDREN
AND FAMILIES ("DCF")
THE NEW JERSEY DIVISION OF
CHILD PROTECTION AND PERMANENCY
("DCP&P") (Formerly Division Youth & Family Services),
DEPARTMENT, in their individual capacities:
CASE WORKER: YAZMIKA BOOKER,
in her individual capacity,
CASE WORKER: RAEL TUNDE,
In his individual capacity
ACCESMENT COUNSEL TIMOTHY MCAVOY
In his individual capacity
SUPERVISOR FOR INTAKE ADAM JANIEC,
in his individual capacity,
CASE WORK SUPERVISOR: TARA HORN
in her individual capacity,
MANAGER: MELENA ANDERSON,
in her individual capacity,
ASSISTANT AREA DIRECTOR: AILIME DADDAZIO,
in her individual capacity,
AREA DIRECTOR: KRISTEN PINHO,
in her individual capacity,
ASSISTANT COMMISSIONER: LAURA JAMET,
in her individual capacity.
COMMISSIONER: CHRISTINE NORBUT BEYER,
in her individual capacity,

1.  Albert Taylor in the above-captioned matter is the Plaintiff, by self-representation as

Pro se or his cause of action against Defendants, states as follows:

## JURISDICTION AND VENUE

2. The Jurisdiction of this Court is invoked pursuit to 42 U.S.C. 1983. This Court has jurisdiction over Plaintiff's federal civil rights claim pursuant to 28 U.S.C 1331 and 1343, and supplement jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

3. Venue is proper under 28 U.S.C. 1391 because the event giving rise to Plaintiff's occurred in this District.

4. The acts, omissions and conspiracies alleged in this complaint were engaged in and carried out by all defendants individually and under color of state law and/or agents, employees and co-conspirators of the New Jersey Division of Child Protection and Permanency, of Hudson County and through their employees, agent, officials, and co-conspirators pursuant to governmental policy, practice, and custom and under color of law.

5. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §§1331, 1333, 1343 and1367 which confer original jurisdiction upon the Court on the grounds that the instant action arises under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, as amended, 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988, and Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12165).

6. Venue in the New Jersey District is properly laid pursuant to 28 U.S.C. §1391, in so far as the following alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the claims of the Plaintiff, arose within the geographical limits of this District, there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## PARTIES

7. The (Plaintiff), Albert Taylor) (Taylor) (Albert)(father)is a resident of The State of New



York, who was residing in Kings County New York at times relevant to this Complaint. Albert is a male of African American decent. Albert is a single dad who cares for and supports his three daughters D.T. K.T.C.T. who were all residing with him and in custody during the action of the defendants.

8.. The Defendant, City of Jersey City (hereinafter "Jersey City"), is always a municipality within The State of New Jersey and relevant to the allegations of this Complaint, the City of Jersey City's mailing address is 280 Grove St. Jersey City NJ 07302. The City of Jersey are the employers of the individual defendants. DCPP is a state agency, it works collaboratively with local municipalities, including the City of Jersey City.

9. The Defendant, County of Hudson (hereinafter "Hudson County"), is always a municipality within The State of New Jersey and relevant to this Complaint, the County of Hudson mailing address is 595 Newark Ave Jersey City New Jersey 07306. The County of Hudson are the employers of the individual defendants. DCPP is a state agency, it works collaboratively with local municipalities, including the County of Hudson.

10. The Defendant, Department of Children and Families ("DCF"), is a state agency that is employed by the City of Jersey City and, County of Hudson to be responsible for overseeing children welfare services and programs within the State of New Jersey. Department of Children and Families are located at 50 State St. P.O. Box 717 Trenton NJ 08635. Department of Children and Families are the employer of The Division of Child Protection and Permanency, and is fully responsible for hiring, teaching, training, guidance, educational programs, supervision, discipline, and termination of staff, caseworkers, supervisors, managers, supervisors, assistant area directors, area directors, and is responsible for employees, including the teaching and training not to violate individuals' constitutional rights, civil rights,

federal laws, and state laws.

11. The Defendant, Division of Children Protection and Permanency ("DCPP"), (formerly known as the Division oy Youth and Family Services (DYFUS), herein refereed to at times throughout this complaint as "DYFUS. Defendant is New Jersey's child protection and child welfare agency within the Department of Children and Families (DCF).

12. The Defendant, Yasmika Booker ("Booker") (a "DCP&P Defendant"), is currently employed as a Case Worker of DCP&P child protective services located at 438 Summit Ave Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint. The Defendant is a caseworker investigator, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

13. Defendant, Rael Tunde ("Tunde") (a "DCP&P Defendant"), is currently employed as a Case Worker of DCP&P child protective services located at 438 Summit Ave Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint. The Defendant is a caseworker, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of



Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for his acts and omissions in his individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto were acting within the scope of his duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of his action.

14. Defendant, Dorothy King ("King") (a "DCP&P Defendant"), is currently employed as a Case Worker Permanency of DCP&P child protective services located at 438 Summit Ave Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint.

The Defendant is a caseworker investigator, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

15. Defendant, Timothy McAvoy ("McAvoy") (a "DCP&P Defendant"), is currently employed as Assessment Counsel for DCP&P child protective services located at 438 Summit Ave Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint.



The Defendant is a currently/formerly, employed by the Defendants, The City of Jersey City,

Hudson County, Department of Children and Families, Commissioner of the New Jersey

Department of Children and Families, The Division of Child Protection and Permanency, within
The State of New Jersey or any other governmental entity that acted in the course of their

employment and/or under color of state law.

16. Defendant, Adam Janiec ("Janiec") (a "DCP&P Defendant"), is currently/formerly

employed as a Supervisor for Intake of DCP&P child protective services located at 438 Summit

Ave Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint.

The Defendant is a currently/formerly, employed by the Defendants, The City of Jersey City,

Hudson County, Department of Children and Families, Commissioner of the New Jersey

Department of Children and Families, The Division of Child Protection and Permanency, within
The State of New Jersey or any other governmental entity that acted in the course of their

employment and/or under color of state law.

The Defendant is liable for his acts and omissions in his individual capacity done under the color
of state law. This Defendant is entrusted to protect the Constitutional rights of those he

encounters and at all times relevant hereto were acting within the scope of his duties and a

authority, under color or title of state laws and federal laws, supervised or controlled one or

more of the Defendants herein, or acted in concert with one or more of the other individual

Defendants in the performance or conduct of his action.

17. Defendant, Melena Anderson ("Anderson") (a "DCP&P Defendant"), is currently

employed as a Manager of DCP&P child protective services located at 438 Summit Ave

Jersey City N.J. 07306, County of Hudson, and during relevant times to this Complaint.

The Defendant is a caseworker investigator, employed by the Defendants, The City of

Jersey City, Hudson County, Department of Children and Families, Commissioner of the New



Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

18. Defendant, Ailime Daddazio ("Daddazio") (a "DCP&P Defendant"), is currently employed as an Assistant Area Director of DCP&P child protective services located at Gateway Plaza 2nd Floor 1 Harmon Meadows Blvd. Secaucus N.J. 07094, and during relevant times to this Complaint. The Defendant is an Assistance Area Director, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

19. Defendant, Area Director Kristen Pinho ("Pinho")) (a "DCP&P Defendant"), is currently employed as an Area Director of DCP&P child protective services located at Gateway Plaza 2nd Floor 1 Harmon Meadows Blvd. Secaucus N.J. 07094, and during relevant times to this

Complaint. The Defendant is an Area Director, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

20. The Defendant Laura Jamet ("Jamet") (a "DCP&P Defendant") is the current Assistant Commissioner of the Department of Children and Families located at 50 State Street P.O. Box 717 Trenton N.J. 08625, and during relevant times to this Complaint. The Defendant is an Assistant Commissioner, employed by the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

The Defendant is liable for her acts and omissions in her individual capacity done under the color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto were acting within the scope of her duties and a authority, under color or title of state laws and federal laws, supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of her action.

21. The Defendant Christine Norbut Beyer ("Beyer") (a "DCP&P Defendant") is the current Commissioner of the Department of Children and Families located at 50 State Street P.O. Box



717 Trenton N.J. 08625, and during relevant times to this Complaint. The Defendant is an

Commissioner, employed by the Defendants, The City of Jersey City, Hudson County,

Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, within The State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law.

22. The Defendant is liable for her acts and omissions in her individual capacity done under

the color of state law. This Defendant is entrusted to protect the Constitutional rights of those

she encounters and at all times relevant hereto were acting within the scope of her duties and a

authority, under color or title of state laws and federal laws, supervised or controlled one or

more of the Defendants herein, or acted in concert with one or more of the other individual

Defendants in the performance or conduct of her action.

## NOTICE OF CLAIM

23. A timely Notice of Claim has been filed by the Plaintiff against the (municipality) City, County, and more than six months have elapsed without resolution of this claim. The New Jersey Tort Claim Act N.J.S.A. 59:1-1

## INTRODUCTION

24. This action arises from one of the most shameful, vicious, and cruel acts of punishment by the Defendants, Division of Child Protection and Permanency of the City of Jersey City, County of Hudson, to violate a parent rights, by falsifying evidence, and withheld crucial evidence to cause the removal of the father's daughter from his custody and care, and deprived the father from any communication, visits, contact, reunification with his daughter for more than two years and counting, and the conspiracy for all the Defendants to cover it up.

25. It seeks compensation for the unconstitutional and tortious conduct of caseworkers, supervisors, managers, and area directors, who witnessed and are aware of these events yet failed to report what they knew, thereby creating a "sister and brotherhood of silence", and lies to obstruct justice and prevent the truth from surfacing, with the protection from superiors who failed to control subordinates with a history of unlawful behavior. The Plaintiff seek redress



against the Department of Children and Families, and the City of Jersey City, County of Hudson for their, DCF, deliberate indifference and negligence with respect to customs, policies, and practice that permitted, condoned, and preserved a "sister and brotherhood of silence" environment in which most employees of DCPP believed they would be insulated from swift and an effective Investigation.

26. These egregious violations committed by the Defendants (DCPP, against the Plaintiff constitutional rights, civil rights, parental rights, federal and state laws. The actions of the Defendants, through the false reporting of evidence and statements, have resulted in the wrongful removal of the Plaintiff's nine-year-old daughter, C.T.

The Defendant's actions of removing the child from the care and custody of the Plaintiff and subsequently preventing any interaction, communication, visit, or contact with his daughter constitutes a severe violation of the Plaintiff's rights.

27. Furthermore, despite the Superior Court of Hudson County's decision on May 12th, 2022, stating that the Plaintiff did not abuse or neglect his daughter, still, the Defendants have refused to return the child to his care or facilitate any
form of interaction or contact with him and his daughter.

28. The Defendants knew that the Family Court of Kings County New York ordered the mother to produce the child to the NYC SHERRIFF's office, including issuing a Warrant of Arrest against the mother before the removal, however, the Defendants disregard the orders and obstruct justice. These continued actions by the Defendants demonstrate a clear violation of the Plaintiff's rights and can be seen as cruel and unusual punishment that no parent should ever experience.

29. The Defendant's actions not only violated Constitutional rights, civil rights, parental rights, federal and state laws, but also went against the established policies of their agency. The Defendant's actions, which include threats, obstruction of justice, invasion of privacy, collusion, false statements, fabricating evidence, hindering of evidence, false reporting, all contribute to the unlawful removal of his daughter C.T. from his custody and care. Defendants also deprived the Plaintiff of any communication, visits, with his daughter since the removal.

30. In the context of Booker's investigation of abuse, Booker developed a non-professional relationship with the mother and engaged in misconduct. Booker, motivated by personal animosity towards the plaintiff, resorted to providing false statements and fabricating allegations of abuse against the father. These unfounded accusations were made without providing any substantial evidence or proof in order to facilitate the removal of the child from the father's care and ultimately grant custody to the mother. The child was removed merely from Booker's testimony and hearsay. Under N.J.S.A pursuant to the Dodd act, A child can be removed from a parent if that child was in Risk of Imminent harm, N.J.S.A. 9:6-8.9.



31. Booker fabricated testimony and report stating that the child was being abused and in Imminent

Risk of Harm. The Fact-Finding trial's decision stated that the father did not abuse his child and contradict the Defendants action to remove the child.

It is contended that Booker's actions were driven by a biased agenda, as she harbored a dislike for the plaintiff. By making baseless allegations of abuse and fabricating false evidence, including hindering the evidence that could have prevented the Plaintiff's child from being removed from his care and custody.

32. Booker was aware of multiple false reports of abuse filed by C.T.'s mother and K.T.'s mother to the Jersey City Police Department (JCPD) and child protection agencies in the weeks leading up to the removal of the child. However, Booker intentionally concealed and suppressed these reports, preventing them from coming to light and exposing the malicious intentions of the mothers involved.

33. Despite having knowledge of these false reports, Booker failed to disclose this crucial information during custody proceedings or take appropriate action to investigate the validity of the allegations. By actively covering up the reports, Booker acted to protect the mothers and shield them from being exposed for their deceitful motives.

34. This deliberate suppression of relevant information has had significant consequences, as it has led to the wrongful removal of the child from the plaintiff's care and the perpetuation of false accusations against the father. The Plaintiff provided Booker with the false report documents from JCPD records, however, Booker hindered those evidence and continued to deprive the Plaintiff of his parental rights and subjected him to the detrimental effects of these baseless allegations.

35. It is crucial to highlight that the Defendents's knowledge of the false reports and their subsequent concealment demonstrates willful disregard for the truth and a violation of the plaintiff's rights. By suppressing this information, they have perpetuated a miscarriage of justice and perpetuated the harm caused to the plaintiff and their relationship with the child.

Given these circumstances, seeking legal recourse becomes imperative to hold the Defendants accountable for their actions, address the suppression of evidence, and restore justice to the plaintiff and the child.

36. The Defendants colluded with the mother Jasmine Ortiz to violate court order and obstruct justice to assure the mother the transfer of custody which she had been seeking for several years within the Family Court of Kings County NY. As a result of the Defendants' unlawful conduct and actions, against the Plaintiff to remove his daughter from his custody and care, the Plaintiff has endured profound emotional anguish, stress, and a loss of the irreplaceable time and experiences that could never be shared with the child again. This damage was caused by the Defendants, resulting in the Plaintiff experiencing emotional distress, emotional trauma, sleeping disorder, constant sadness, lack of confidence, and fear of any social service workers. The Plaintiff pain and suffering are a direct consequence of the Defendant's action of violating the Plaintiff's constitutional rights.

## FACTUAL AND GENERAL ALLEGATIONS

37. On June 14th, 2021, the Family Court of Kings County, NY issued a Warrant of Arrest against Jasmine Ortiz, the mother of the child, as she willfully and deliberately violated the



court's order issued on June 8th. The court order specifically mandated that the mother produce the child to the NYC Sheriff's Office. Instead of complying with the court's directive, the mother chose to go into hiding, taking the child with her. Despite the fact that the mother was evading authorities and attempting to elude the legal consequences of her actions, it has come to light that the Defendants, and Booker, who are directly involved in this case, continued to stay in communication with the mother and were fully aware of her whereabouts and that of the child.

38. By maintaining contact with the mother and possessing knowledge of their location, the Defendants knowingly and willingly engaged in obstructing justice. The Defendants' deliberate communication and concealment of the mother and child's whereabouts directly contributed to the obstruction of justice in this matter. Their actions demonstrate a clear disregard for the court's authority and a willingness to aid and abet a fugitive from the law. By actively assisting the mother in evading capture and ignoring the court's orders, the Defendants have violated their duty to uphold the law and act in the best interests of justice.

39. The obstruction of justice committed by the Defendants has had severe consequences, resulting in the continued separation of the child from the plaintiff and the denial of the plaintiff's rights to interact, this egregious violation of the court's order and the plaintiff's rights has caused significant emotional distress and harm to both the plaintiff and the child.

40. Not only were the defendants fully aware of the court order and arrest warrant issued against Jasmine Ortiz, the mother of C.T., but they were also knowledgeable about her involvement in other unlawful actions. It has been discovered that on May 10th, 2021, the mother falsely reported allegations to the JCPD (Jersey City Police Department), implicating the plaintiff in wrongful acts. Furthermore, Jasmine also made false allegations of abuse against the plaintiff to the New Jersey Child Abuse Hotline on the same day.

41. In addition to these false allegations, on May 14th, 2021, Shaquana Myrick, the mother of K.T., attempted to kidnap her own daughter and take her to Florida without the plaintiff's knowledge or consent. The NYPD (New York Police Department) became involved, and fortunately, the child was safely returned the following day. This attempted kidnapping further highlights the mother's disregard for the law and the well-being of the child.

42. Adding to this, the mother of the child K.T. committed a similar crime by falsely reporting allegations to the JCPD on June 4th, 2021. Despite their awareness of these inappropriate and unlawful actions, the defendants chose to hinder the appropriate handling of



these matters. They knowingly allowed these false reports and allegations to persist without taking any action to rectify the situation or prevent further harm. By neglecting their duty to address these fraudulent claims and actively hindering the appropriate investigation and resolution of these matters, the defendants have demonstrated a lack of integrity and a disregard for justice.

43. These actions by the Defendants not only undermine the integrity of the judicial process but also violated the Plaintiff's right to a fair and just custody determination based on accurate information and evidence. The Defendants' willingness to engage in falsified reporting and manipulation of the system highlights their ulterior motives and their disregard for the well-being of the children involved.

44. During the month of June 2021, it has come to light that the defendant Booker intentionally fabricated allegations and falsely reported to the JCPD (Jersey City Police Department) that the plaintiff had threatened her. Furthermore, Booker requested the presence of law enforcement as an escort during interactions with the plaintiff. However, it is crucial to note that no evidence was ever presented by Booker to substantiate her claims of a threat. It is essential to recognize that such falsification of allegations constitutes a criminal offense in the state of New Jersey.

45. In addition to the false claim reported by booker are, she witness feces and urine in the home she
visited on June 8th, 2021, Booker also made a baseless statement that there was no food in the home. However, she later retracted this statement during her testimony at the fact-finding hearing. These fabricated allegations serve to tarnish the Plaintiff's character and create a negative perception of his ability to provide a suitable environment for his daughter.

46. Furthermore, Booker made another false report stating that the Plaintiff had admitted to offering
to buy a sex toy for his daughter. This claim is entirely unfounded, and the Plaintiff vehemently denies ever making such a statement. It is evident that Booker is aware of the power of her position as a case worker and the weight her words carry in court proceedings. She knows that the court tends to give more credibility to the allegations and hearsay of the caseworkers over those of the respondent.

47.The reliance on unsubstantiated claims and the absence of any credible evidence strongly indicate that Booker's accusations are fabricated and motivated by a personal agenda. It is crucial for the court to recognize these false allegations for what they are and consider the lack of supporting evidence when evaluating the credibility of the claims made by the Defendants.

48. The Plaintiff's rights and reputation should not be unjustly tarnished based solely on the uncorroborated statements of a biased case worker.
It is important to note that Booker has failed to provide any substantial evidence to support her allegations. There are no video recordings, audio recordings, signed confessions from the



Plaintiff, medical reports, police reports, or injury reports to substantiate these claims. The only basis for these false allegations is Booker's own words and written reports.
This ongoing tactic of falsifying reports and making unsubstantiated claims demonstrates the Defendants' willingness to engage in deceitful practices in order to manipulate the legal system and maintain control over the custody situation.

49. Case Worker Tunde's conduct in this matter has been deeply concerning. Following the removal of the child, Tunde consistently made false allegations against the plaintiff, accusing him of abusing his daughters. Despite the plaintiff's repeated assertions of innocence and denial of any wrongdoing, Tunde persisted in his accusations and even went as far as threatening the plaintiff with violence. This behavior is highly inappropriate and unprofessional. It is crucial to emphasize that the plaintiff has maintained his innocence and vehemently denied any allegations of abuse. Tunde's refusal to believe the plaintiff and his continuous false accusations have caused significant distress and harm to the plaintiff's reputation and emotional well-being.

50. Such unfounded allegations and threats from a case worker who is entrusted with the welfare of children are deeply concerning and should not be tolerated. The plaintiff deserves fair treatment and should be afforded the opportunity to present his side of the story without facing baseless accusations and threats from a case worker who is supposed to act in the best interests of the child.

51. The actions of Case Worker Tunde and the Defendants in providing unlawful foster care services to the plaintiff's daughters, D.T. and K.T., are deeply concerning and demonstrate a disregard for the law and the rights of the individuals involved. It is important to highlight the Following key points:
Both children, D.T. and K.T., do not reside in the state of New Jersey, and there was no legal basis for the defendants to provide foster care services to them in New Jersey. The defendants did not have the authority to provide for the children that are not in their foster care service.

52. The defendants' license and insurance do not have the necessary legality to conduct such foster care services, home assessment, and monitoring for D.T. and K.T. This raises serious questions about the legitimacy and appropriateness of the services provided by the defendants. D.T. was residing and attending school in Bronx County, while K.T. was residing and attending school in Florida. The defendants' actions in attempting to intervene in the lives of these children, who were already in stable living situations outside of New Jersey, further demonstrate a violation of their rights and an abuse of power.



53. The plaintiff's daughter, K.T., expressed distress and sadness over the defendant's actions, indicating that she was being harassed and mistreated by them. This emotional harm caused to the child further highlights the defendants' abuse of power and their disregard for the well-being of the individuals involved.

It is clear that the defendants' actions have not only violated the plaintiff's rights but have also violated state and federal laws regarding the provision of foster care services and the rights of parents and children.

54. D.T. was residing and attending school in Bronx County, while K.T. was residing and attending school in Florida. The defendants' actions in attempting to intervene in the lives of these children, who were already in stable living situations outside of New Jersey, further demonstrate a violation of their rights and an abuse of power. The plaintiff's daughter, K.T., expressed distress and sadness over the defendant's actions, indicating that she was being harassed and mistreated by them. This emotional harm caused to the child further highlights the defendants' abuse of power and their disregard for the well-being of the individuals involved.

55. It is clear that the defendants' actions have not only violated the plaintiff's rights but have also violated state and federal laws regarding the provision of foster care services and the rights of parents and children.

56. On March 21st, 2021, an incident occurred involving Case Worker Tunde and the plaintiff, which raises serious concerns about Tunde's behavior and abuse of power. The following details the events that took place: The plaintiff handed Tunde a subpoena to appear in court. Instead of handling the situation professionally, Tunde became hostile and began threatening the plaintiff. This aggressive behavior is unacceptable and completely inappropriate. Tunde took the subpoena and threw it in the garbage bin, displaying a clear disregard for legal proceedings and the plaintiff's rights. Such actions demonstrate a lack of professionalism and disrespect for the legal process.

57. Tunde went further by physically pushing the plaintiff and invading his personal space. This behavior created a sense of fear and insecurity for the plaintiff, as Tunde exceeded his authority and engaged in unwarranted physical contact. It is important to note that Tunde is neither a security guard nor a law enforcement officer. Therefore, his actions cannot be justified under any professional capacity. Tunde had no legal grounds or authority to behave in such an aggressive and threatening manner.



58. Fortunately, the plaintiff managed to record a video capturing Tunde's conduct during the incident. This recording serves as evidence of Tunde's inappropriate behavior and can be crucial in further addressing the matter.

59. Tunde's actions of filing false allegations and making false statements to hinder the plaintiff's ability to communicate, visit, and reunify with his daughter are deeply concerning and raise serious ethical and legal issues. By intentionally fabricating negative allegations against the plaintiff, Tunde is engaging in manipulative tactics that aim to harm the plaintiff's chances of gaining custody of his daughter.

Such behavior is not only unethical but also detrimental to the well-being and best interests of the child involved. Tunde's actions not only undermine the plaintiff's parental rights but also create barriers to the plaintiff's efforts to establish a meaningful relationship with his daughter.

60. On Jan 6th, 2023, Defendant Dorothy King, have violated the Plaintiff rights for Privacy: The Supreme Court protects individuals' privacy rights, those rights are interpreted within the Fourth Amendment of the Constitution. In addition to violating the Fourth Amendment of the Constitution and the Plaintiff's right to privacy, the Defendant Dorothy King's act of secretly recording a video of the Plaintiff's bedroom without his consent or knowledge also infringes upon several other constitutional and civil rights. Firstly, it violates the Fifth Amendment, which protects individuals from being deprived of life, liberty, or property without due process of law.

61. By recording the Plaintiff's bedroom without his knowledge or consent, the Defendant King infringed upon his right to privacy, which is inherent in the concept of liberty protected by the Fifth Amendment.

Secondly, the Defendant's actions may also violate the Fourteenth Amendment, which ensures equal protection under the law. By surreptitiously recording the Plaintiff's bedroom, the Defendant potentially engaged in discriminatory behavior or targeted the Plaintiff based on his protected characteristics, such as his gender, race, or religion. This would constitute a violation of the Plaintiff's equal protection rights.

62. Furthermore, the act of secretly recording in someone's bedroom without their consent may also contravene state laws, specifically New York video recording laws. These laws generally prohibit the unauthorized video recording of individuals in private spaces, such as bedrooms, without their knowledge or consent. Therefore, the Defendant's actions have violated New York state laws related to video recording Section 250.45.



63. King's repeated falsification of reports against the Plaintiff demonstrates a clear pattern of misconduct and abuse of power. By falsely claiming non-compliance with mandated services, King aims to impede the Plaintiff's ability to reunite with his daughter, have visitation rights, or maintain regular communication. These actions not only violate the Plaintiff's rights but also hinder the restoration of the parent-child relationship and inflict emotional distress on the Plaintiff. King's behavior is an abuse of authority and a violation of the Plaintiff's due process rights.

64. The Defendants employed coercion and threats to force the Plaintiff into providing his urine and DNA, stating that failure to comply would result in the permanent loss of communication, visitation, and reunification with his daughter, C.T. The Plaintiff refused the test, as he believed it was unnecessary since he had done nothing to warrant the Defendants acquiring his DNA. Despite his objections, the Plaintiff felt compelled and under duress to submit his DNA, fearing that he would never see his daughter again if he did not comply.

65. Defendants King scheduled an interview with the Plaintiff to appear on December 7th, 2022, at their office located at 438 Summit Ave, Jersey City, NJ 07305. During the meeting, an individual representing the Defendants of the name of Timothy McAvoy informed the Plaintiff that he was required to provide his urine. The Plaintiff expressed his reluctance, citing concerns about his DNA being present in the sample. In response, the individual became visibly frustrated and angry towards the Plaintiff. The individual then warned the Plaintiff that if he did not sign the necessary forms and provide his urine, it would likely hinder his chances of regaining custody of his daughter. Although the Plaintiff felt coerced into complying with the Defendants' demands, he stated that his sole motivation was to regain custody of his daughter.

66. The individual then escorted the Plaintiff through a corridor and into a bathroom. Inside the bathroom, the individual handed the Plaintiff a cup, small beaker, and syringe. The Plaintiff was ordered to urinate in the cup, then to use the syringe to extract the urine and transferred it into the small beaker, which was then placed in a plastic bag. The individual instructed the Plaintiff to approach a urinal to conduct the procedure.

67. As the Plaintiff began to proceed, the individual followed closely behind. The Plaintiff requested that the individual leave the bathroom to allow him privacy while urinating in the cup. However, the individual insisted on remaining in the room and watching the procedure, dismissing the Plaintiff's discomfort. The Plaintiff started to cry and expressed his discomfort



with a stranger watching him urinate in a cup. He pleaded with the individual to take a few steps back to provide privacy.

68. However, the individual denied the request, stating that it was his job to observe the procedure. The Plaintiff reiterated that he was only complying to have his daughter returned to his care. Due to the shame and humiliation, he felt, the Plaintiff struggled to urinate. The individual suggested that the Plaintiff drink some water, and after several minutes passed, the Plaintiff was able to urinate in the cup. The individual then approached the Plaintiff to confirm that his penis was in the cup, causing the Plaintiff to feel disgusted and diminished as a man.

69. The Plaintiff voiced his objection, stating that such actions were unacceptable and that nobody should have to endure this type of ordeal. In response, the individual assured the Plaintiff that he would not have to undergo the procedure again and justified the experience as a sacrifice one must make to do the right thing, even if it is disagreeable.

70. The following week, after the Plaintiff had submitted his urine and DNA under duress, the individual contacted him and requested his return to repeat the procedure. The Plaintiff explained his discomfort and trauma, expressing his unwillingness to comply due to the distress of having someone scrutinize his genitals. However, the individual insisted that the Plaintiff must return to avoid defaulting on the initial process. Feeling trapped and with no other option, the Plaintiff reluctantly agreed to return, emphasizing that he was doing so solely to be able to see his daughter, C.T., again.

71. As a result of the Defendants' actions, the Plaintiff experienced extreme duress and pressure to submit his urine and DNA.

DCPP's alleged sole basis for bringing a Complaint for neglect against the Plaintiff, was due to caseworker Yasmika Booker's investigation. Booker's investigation failed to find that the child C.T, was ever abused. Booker's investigation originated from individuals reporting false allegations against the Plaintiff. Booker testified that she never discovered any evidence to support the allegations, she never discovered any injuries upon the children, no visible injuries from the past, injuries the children had good academic grades, up to date on immunizations, proper nutrition for their age and growth, the home was not hazardous, no police report that the children were ever injured, no medical report that he children ever been injured, Booker main claimed to remove the child C.T. is from hearsays from other individuals. Booker knew that the

same exact allegations what reported against the Plaintiff four years earlier, that the Family

72. Court of Kings County NY already investigated and dismissed on December 14th, 2021. The Supreme Court of New York was involved and within their Order and Decision stated that the allegation that they presided over proved that the Plaintiff did not commit any of the allegations. The Plaintiff showed Booker all the documents on June 8th, 2021.

The Defendant Booker knew that several of the children's mothers were making false reports within Jersey City against the Plaintiff, the Plaintiff provided Booker with two reports that Jasmine Ortiz and Shaqauna Myrick falsey reported.

73. DCPP's alleged sole basis for bringing a Complaint for neglect against the Plaintiff, as testified by DCPP's caseworker Yasmika Booker, were the allegations made by individuals, in interviewing those individuals. Booker testified that she never discovered any evidence to support the allegations, she never discovered any injuries upon the children, no visible injuries from the past, injuries the children had good academic grades, up to date on immunizations, proper nutrition for their age and growth, the home was not hazardous, no police report that the children were ever injured, no medical report that he children ever been injured, Booker main claimed to remove the child C.T. is from hearsays from other individuals. Booker knew that the same exact allegations what reported against the Plaintiff four years earlier, that the Family Court of Kings County NY already investigated and dismissed on December 14th, 2021.

74. The Supreme Court of New York was involved and within their Order and Decision stated that the allegation that they presided over proved that the Plaintiff did not commit any of the allegations. The Plaintiff showed Booker all the documents on June 8th, 2021.

The Defendant Booker knew that several of the children's mothers were making false reports within Jersey City against the Plaintiff, the Plaintiff provided Booker with two reports that Jasmine Ortiz and Shaqauna Myrick falsey reported.

75. The Defendants knew that the hearsay statements did not have credibility and were only used by the Defendants as a pretext to violate the Constitution and the Plaintiff's civil rights.



The Defendants knew that the hearsay statements did not have credibility and were only used by the Defendants as a pretext to violate the Constitution and the Plaintiff's civil rights.

76. On June 8th, 2021, the Family Court of Kings County NY, ordered the mother Jasmine to produce the child C.T. to the NYC Sherriff Office, due to that the mother did not return the child from a court order visits that states the mother has visits from 6:00PM June 4th, 2021, to 8:00AM June 7th, 2021. The Plaintiff then filed a police report within the 73rd Precinct Police Station house within Kings County NY. A squad car went to the mother's home with the court order to retrieve the child. When the officers arrived at the mother's home, the mother acted very rude to the officers, and told them she was not complying with the order. The officers told the Plaintiff to go to the Family Court and explain to the court of the mother's action. The plaintiff filed a Habeas Corpus within the Family Court in Kings County NY.

77. On June 8th, 2021, a hearing was scheduled at the Family Court of Kings County NY, and the Judge ordered the mother to return the child to the father or the courts. The mother acted rudely to the judge and told her she was not going to comply and rudely left the hearing. The mother deliberately refuses to comply with the order from the judge; instead, the mother went into hiding, with the child evading the authorities who were searching for her and the child C.T.'s whereabouts. The severity of this situation necessitated the issuance of a warrant of arrest against the mother by the Family Court of Kings County NY.

78. Defendant Booker's knowledge of the mother's violation of court orders is evident, as she maintained constant contact with the mother and actively encouraged her to disregard the court's directives. Rather than promoting compliance with the court order, Defendant Booker actively assisted the mother in her wrongful actions of violating court orders and obstructing justice. This behavior demonstrates Defendant Booker's complicity in the mother's misconduct and her disregard for the legal obligations and responsibilities imposed by the court. By aiding and abetting the mother's actions, Defendant Booker has not only violated her professional duties but has also contributed to the erosion of justice and the integrity of the legal system.

79. Subsequently, on June 14th, 2021, the Judge at the Family Court of Kings County, NY, issued a warrant of arrest for Jasmine Ortiz. Shockingly, the Defendants Booker conspired with the mother to obstruct justice and violate the court order by interfering and harboring the mother's whereabout to the authorities. Defendant contacted the mother and instructed the



mother to bring the child from her hiding place in Kings County, New York, to foster care in

Jersey City, NJ, in an attempt to remove the child unlawfully from the custody and care of the

Plaintiff, and to violate court order and to obstruct justice. These unlawful acts by the defendants

have flagrantly violated the Plaintiff's constitutional rights, civil rights, state laws, federal rights,

and parental fundamental rights.

80. In addition to the previous instances of misconduct, it is crucial to highlight another
incident involving case worker Booker. Days after the Plaintiff's daughter was unlawfully
removed from his care, Booker proceeded to falsify reports to the JCPD, claiming that she
required their services to accompany her to the Plaintiff's adult daughter's residence. Booker
alleged that the Plaintiff had made threats against her via text messages. However, Booker failed
to provide any evidence of these alleged threats to the law enforcement agency or the court.
It is important to emphasize that the Plaintiff never once threatened Booker, and there is no basis
for such false allegations. It is evident that Booker fabricated these claims as part of a deliberate
strategy to complicate the Plaintiff's efforts to regain custody of his daughter. This tactic of
making false allegations against the Plaintiff is consistently employed by all the Defendants
involved in this case, reflecting a pattern of behavior aimed at undermining the Plaintiff's
parental rights and chances of obtaining custody of his daughter.
81. Furthermore, it is imperative to address the disturbing false allegations made by case
worker Booker against the Plaintiff. Booker falsely claimed that during her visits to the
Plaintiff's home and witnessed dog feces and urine on the bedroom floor. However, during the
fact-finding hearing, Booker admitted under oath that she had lied about seeing feces and urine
in the home, acknowledging that it was an untrue statement.
82. Additionally, I want to emphasize that on May 12th, 2022, the Superior Court of Hudson

County ruled in a fact-finding hearing decision that the Plaintiff did not abuse or neglect his

daughter, C.T. Despite this ruling, the defendants continue to prevent the Plaintiff from having

any communication, contact, visits, or reunification with his daughter. This ongoing denial of the

Plaintiff's rights directly violates N.J.S.A. 9:17-39, which explicitly guarantees parental rights.

Moreover, the Defendants' actions disregard the best interests of the child and demonstrate a lack

of compassion for the well-being of C.T., including having an ongoing relationship with her

father.

83. The Defendants' involvement in this matter appears to be motivated by their intention to

fabricate abuse and neglect allegations against the Plaintiff, with the ultimate goal of transferring

custody to the child's mother. This manipulation of the situation is a direct violation of N.J.S.A

30:4C-12, which pertains to the termination of parental rights. Furthermore, the defendants have

exhibited bias against the plaintiff, while maintaining a friendly non-professional relationship

with the mother. It is evident that the Defendant's actions were not driven by the safety of the



child but rather by a desire to switch custody from one parent to the other.

Additionally, the defendants have actively prevented the Plaintiff from having any communication, visits, or contact with his daughter, which is a direct violation of N.J.S.A. 9:17-84 . Despite the passage of over two years, the Defendants have made no attempts to reunify the plaintiff with his daughter, a clear violation of N.J.S.A. 30-4C-11.3. It is crucial to note that the Superior Court of Hudson County, in a fact-finding decision dated May 12th, 2022, ruled that the Plaintiff did not abuse or neglect his daughter.

The Defendants have systematically denied the Plaintiff the ability to exercise his decision-making authority in matters pertaining to his daughter's religion decision, education decision, medical care decision, and all everyday living of his daughter during her childhood.

85. This direct interference by the Defendants within the Plaintiff's parental rights and constitutional rights to freedom of religion is both distressing and unlawful.

As a parent, the Plaintiff has the right to participate in important educational choices, such as selecting the appropriate school or educational program for the Plaintiff's child. However, the Defendants have undermined the Plaintiff's input and denied him the opportunity to contribute to these decisions, thus infringing upon the Plaintiff's parental rights and depriving his daughter of a well-rounded educational experiences.

86. Furthermore, the Defendants have impeded the Plaintiff's ability to exercise his decision-making authority in matters related to his child's medical care. As a parent, the Plaintiff has the right to be involved in medical decisions that directly impact on his daughter's health and well-being. However, the Defendants have consistently disregarded the Plaintiff's input, excluded the Plaintiff. From medical discussions and decisions regarding the Plaintiff's child's medical care without his consent or knowledge. This violation of the Plaintiff's parental rights and constitutional rights is both alarming and unacceptable.

87. Due to the Defendant's deliberate prevention and denial of the Plaintiff's involvement in the upbringing and decision-making process regarding his daughter's religion, medical care, and education, it is evident that the Defendants have violated the First, Fourth Amendment of the Constitution. The Defendant's action directly contravenes the First Amendment, which safeguards freedom of religion.

88. By impeding the Plaintiff's ability to particpate in decision concerning his daughter's religious up bringing, the Defendants have infringed upon the Plaintiff's right to exercise his



religious beliefs and practices within the family. By preventing and denying the Plaintiff any involvement in the decision-making process related to his daughter's religion, medical care, and education, the Defendants have infringed upon the Plaintiff's civil rights, and constitutional rights, undermining his ability to exercise his parental rights and participate fully in his daughter's upbringing. Due to the Defendants' violations and denial of the Plaintiff's rights, the Plaintiff has suffered significant damages, including emotional distress, pain, and suffering.

89. The Defendants' actions have caused immense harm to the Plaintiff by depriving him of the opportunity to participate in his daughter's upbringing and make decisions regarding her religion, medical care, and education. As a result of the Defendants' wrongful conduct, the Plaintiff has endured profound emotional anguish, stress, and a loss of the irreplaceable time and experiences that should have been shared with his daughter. These damages and the resulting pain and suffering experienced by the Plaintiff are a direct consequence of the Defendants' violation of his constitutional rights, civil rights, and parental rights.

90. The allegation of abuse originated within NYS Central Registry of Child Abuse and Maltreatment.

The Administration of Children Services (ACS), investigated the same exact allegation that DCPP had investigated days after ACS, ACS determined that the Plaintiff did not abuse or neglect any of his daughters, ACS stated that the allegation is a custody issue.

100. The Family Court of New York investigated the same allegation of abuse

This have been a common practice that the Defendant and their employees have been using for years, especially against lower income black families.

101. The Defendants recently changed their name from DYFUS to DCPP, due to Numerous of lawsuits and Judgement that were awarded against their agency. Although, that the Defendants have changed their name; the Defendants did not change their practice, policies, and procedures to abide by state laws, federal laws, constitutional rights, civil rights, and parent's fundamental rights.

102. The New Jersey Division of Child Protection and Permanency (DCPP) has violated several



critical amendments of The Constitution of the United States as well as state laws in pursuit of

N.J.S.A. 30:4C-1 (Imminent Danger), by removing the child C.T. (daughter) from the Plaintiff's

ccustody and care. The Defendants violated U.S.C. 42 Section 1983

103. The Defendants, The New Jersey Division of Child Protection and Permanency (DCPP)

interfered with the Plaintiff's parental rights by violated the 1st Amendment, 4th Amendment, 5th

Amendment, 8th Amendment, 14th Amendment of The Constitution of The United States.

The Defendants, also have violated state laws in pursuit to N.J.S.A 30:4C-1

N.J.S.A. 30:4C-1 clearly states that the only reason New Jersey Division of Child Protection and

Permanency (DCPP) can immediately remove a child from a home, or from their parent care

without a court order, if there is a threat of imminent danger to the child.

104. According to New Jersey State law section N.J.S.A. 30:4C-1, a child may be removed from

his/her family by DCPP in situations of "imminent danger" or risk of injury or death to a child

living at home with his or her family. In instances where a child has suffered injury in a home

(serious or chronic injuries that are suspicious or unusual in particular); or if another child has

been injured or killed by a parent or guardian in the same home; or a parent is out of control due

to drugs or alcohol addiction or otherwise, and where DCPP has been unable to correct the

situation.

105. The Defendants, did not abide by the state laws of N.J.S.A. 30:04C-1 and chosen to violate

the Constitution of the United States, Parental Rights, Civil Rights by removing the child C.T.

from the Plaintiff's custody and care. Defendants, failed to show that the child had ever been in

"Imminent Danger" to be removed to pursuit N.J.S.A. 30:4C-1.

To make matters worse, the Defendants have prevented the Plaintiff to have any communication,

visit, supervised visits, or any sort of contact with his daughter C.T. since she

was removed from his custody and care on June 14, 2021.

106. The Defendant failed to reunite the child C.T. with her the (father) Plaintiff.

What is more shocking is that the Plaintiff has two more adolescent daughters, D.T. and K.T.

that was in his care, custody of the Plaintiff and resided together with C.T., however, D.T.

and K.T. wasn't removed by the Defendants. The Defendants did not interfere or removed



D.T. or K.T. from the Plaintiff's home, custody and care.

The Defendants, Division of New Jersey Child Protection and Permanency only removed the child C.T. from the Plaintiff's (father), custody and care.

107. On June 8, 2021, Case worker Yasmika Booker who are employed by The New Jersey Division of Child Protection Permanency met with the Plaintiff at the home of the Plaintiff's adult daughter located within Hudson County, New Jersey.

Case worker Booker explained to the Plaintiff that she is there to investigate allegation of child abuse that her office received. Case worker Booker demanded that she enter the apartment to the Plaintiff and say that she needs to inspect the conditions of the apartment.

108. Case worker explained to the Plaintiff that she received allegations of emotion abuse, physical abuse, neglect, and starvation by the Plaintiff against his three biological daughters D.T., K.T., and C.T. The Plaintiff indicated to the Case worker Booker that members of the children's families want to have custody of the children and have been making false allegation to CPS Agency and Law Enforcement Agency within New York and New Jersey of abuse and neglect against the Plaintiff since the year of 2014. The Plaintiff indicated to Case Worker Booker that this has been an ongoing occurrence. The Plaintiff indicated to the Case worker that the mother of the child C. T. Jasmine Ortiz had been a recent family member that made a false report and got caught by the court for her actions.

109. The Plaintiff indicated to Case Worker Booker that Jasmine reported false allegations of abuse against the Plaintiff to have his children D.T. and C.T. to be removed from his custody and care on March 26, 2017. The child C.T. was placed in Jasmine's custody and care. The child D.T. was placed through foster care services with her adult brother as her care keeper through Kinship Even though there was no legal basis for bringing any legal action against the Plaintiff for abuse and neglect of his child, DCPP Defendants then, maliciously and knowingly, used false allegations made about Plaintiff by non-credible individual for the filing for their Verified Complaint for temporary guardianship of C.T.. and allegations of child abuse against Plaintiff.

110. The Plaintiff given temporary custody to the mother who very falsely reported the allegation against the Plaintiff. The defendants stayed in constant contact with the mother before the removal. The Defendant instructed the mother to bring the child C.T. to New Jersey, to promise the mother that they will strip the custody of the father and placed the child within her custody and care.



111. The Defendants knew the mother had a warrant for her arrest before instructing her to bring the child the New Jersey.  the Defendants knew that the Family Court of Kings Count had a court order for the mother to produce the child to the NYC Sherriff before the Defendants unlawfully removing the child, however, the Defendants violate the Family Court of Kings County by telling the mother to place the child in New Jersey foster care to take the controll from NY.

112. The Verified Complaint was riddled with false, absurd allegations.

In addition to the previous incidents, the same individual who oversaw the procedure also interrogated the Plaintiff, delving into his private and personal life. The Plaintiff expressed his reluctance to disclose such intimate details to a stranger who lacked proper certification or licensing as a physician, psychologist, or psychiatrist. However, the individual revealed his affiliation with the Defendants, implying a collaborative relationship between them.

112. These actions by the Defendants represent further violations of the Plaintiff's civil rights and constitutional rights, which appear to be in retaliation for the Plaintiff's previous complaints regarding the Defendants' infringements on his rights.

On May 12, 2022,  Fact Haring trial, the Superior Court of New Jersey issued a Decision that the Plaintiff did not abuse his child C.T. Dismissing DCPP's complaints against The Plaintiff's finding that, in fact, he had never abused or neglected his child C.T., and there was no basis for continuing the action in Court.

113. Defendants, in their conspiracy against the Plaintiff, maliciously tried to compel her to give her child up multiple times asserting that she was an unfit father without any competent evidence against him.

Defendants, in their conspiracy against the Plaintiff, failed to return the child to his care, provided him with communication, and visits, requests for assistance, and continue to provide foster care upon a child and her parents that has no residential or schooling ties within the state of New Jersey.

Defendants' actions harmed Plaintiff's bond with her child.

115. In violating Plaintiff's parental rights, and conducting services, to a child that doesn't reside in the State of New Jersey after the Plaintiff was exonerated of abuse and neglect through fact finding hearing, Defendants have committed fraud upon the Court.

In fact, Plaintiff has never abused or neglected C.T.



Plaintiff has exercised his First Amendment free speech rights and complained about Defendants' conduct.

116. Defendants have in turn retaliated against him on numerous occasions and told him that he cannot do anything about it because they are allegedly "immune" and good luck filing a awsuit against them for their wrongful conduct.

Defendants' actions are unacceptable, malicious and a clear violation of Plaintiff's civil rights and constitutional rights.

DCPP Defendants' obstruction and interference of the Plaintiff's parental rights served no legitimate purpose and was done solely to harass and retaliate against Plaintiff for asserting his Civil Rights.

117. Defendants have participated in an unconstitutional established practice by the DCPP Defendants to maximize short term financial gains from the federal government by shattering loving families in order to create new foster families that are funded by the federal government. Upon information and belief, Defendants have participated in an unconstitutional established practice to secure federal funding at the expense of those vulnerable children and families for decades. 

118. Upon information and belief, DCPP has on prior occasions handled child abuse and neglect complaints in a manner that violated citizen's rights, state laws, federal laws, and the constitution.

Upon information and belief, DCPP has on prior occasions misrepresented factual allegations and anonymous reporting in order to violate citizen's rights, state laws, federal laws, and the constitution.

119. Upon information and belief, DCPP has on prior occasions knowingly misrepresented hearsay allegations in order to violate citizen's rights, state laws, federal laws, and the constitution.

The cause of action alleged, seek to redress the deprivation, under the color of state law, policy and custom, of rights secured by the United States Constitution, the New Jersey Constitution, and the statutory and common laws of the state of New Jersey, and to recover, damages, cost, and attorney fees under 42 U.S.C. 1983, 1985, (1), (2), (3), and 1988.

## CAUSES OF ACTION

## 42 U.S.C. § 1983 CONSPIRACY

## COUNT 1

120. Paragraphs above are incorporated by reference as though fully set forth.

The individual defendants, under color of law, within the DCPP, conspired with each other's, to

reach a mutual understanding, and acted to undertake a course of conduct to injure,

oppress, threaten, and intimidate the Plaintiff in the free exercise and enjoyment of the rights and

privileges and equal protection of the law secured to him by the Constitution, including the

rights: to be free from unreasonable searches and seizures; to associate and speak freely; to have

access to and seek redress in the courts; and to be free from false allegations and to be wrongly

accused of actions he didn't committed.

121. The DCPP, through its agents, was a willful participant in joint action with supervisors,

managers, employees, directors acting under color of law. It is believed that these employees

participated in the conspiracy to further the purpose and goals of the

organization, including the goal of maintaining the "brother and sisterhood". "It was part of the

conspiracy that the defendants did, among other acts, physically removed the Plaintiff child from

his custody of care by violating state and federal laws.

In furtherance of the conspiracy and to cover up the acts of brutality, defendants

engaged in the following:

    a.   Falsely accuse the Plaintiff and prevent him from ever communicating with his child

again:

    b.   Fabricated and contrived child abuse charges against the Plaintiff;

    c.   Although they were aware that they did not find any evidence to support their claim,

        immediately, they deliberately suppressed the truth; and

    d.   Submitted false police reports, statements, or testimony to support and

        corroborate the fabricated charges lodged against the Plaintiff, to insulate their

investigation.

## COUNT 2

### 42 U.S.C. § 1983- FALSEY ACCUSE AND FALSEY CHARGED

122. Paragraphs in this complaint are incorporated by reference as though fully set forth.

by their conduct and under color of law, Defendants Booker, Janiec, Horn, Anderson, Pinho,

Daddazio deprived the Plaintiff of his constitutional right to be free for life, liberty, enjoyment,

and happiness. The Plaintiff's claims damages for the injuries set within this complaint.



## COUNT 3

### 42 U.S.C. § 1983- FAILURE TO INTERCEDE

123. Paragraphs in this complaint are incorporated by reference as though fully set forth. by their conduct and under color of state law, it is believed defendants Booker, Janiec, Horn, Anderson, Pinho, Daddazio each had opportunities to intercede on behalf of the Plaintiff to prevent the unlawful action to their intentional conduct or deliberate indifference declined or refused to do so.

As a direct and proximate result, the Plaintiff suffered injuries and damage described above.

## COUNT 4

### 42 U.S.C. §§ 1981, 1983- FIRST, FOURTH, AND FOURTEENTH AMENDMENT VIOLATIONS

124. Paragraphs within this complaint are incorporated by reference as though fully set forth. By their conduct and under the color of law, all Defendants, including Timothy McAvoy, deprived the Plaintiff of his First Amendment right to have access to and seek redress in the courts. The defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against The Plaintiff.

The defendants' efforts to conceal the truth continue to the detriment of the Plaintiff.

As a direct and proximate result, the Plaintiff suffered the injuries and damage described above.

## COUNT 5

### 42 U.S.C. § 1985(3) CONSPIRACY WITH RACIAL ANIMUS

125. Paragraphs within this complaint are incorporated by reference as though fully set forth. The individual defendants, with the exception of under color of law, conspired with each other, with the PBA, and with others, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate the Plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution including the rights: to be free from parental interference; to be free from unreasonable searches and seizures; to associate and speak freely; to have access and seek redress in the courts; and to be free from falsely charge, false allegation, and the delay and denial of commination and contacts of his child. DCPP, through its employees, was a willful participant in joint action with offers

acting under color of law.

126. In furtherance of the conspiracy, and to conceal the misconduct of all the Defendants. The conduct of the defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate the Plaintiff because of his race, African American. Defendants' racial and ethnic animus was expressed by their racial epithets and ethnically insulting remarks directed at the plaintiff's home during the visit by case worker booker.

As a proximate and direct result of defendants' conduct, the Plaintiff suffered the injuries and damages described above.

## COUNT 6

### 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT

127. Paragraphs within this complaint are incorporated by reference as though fully set forth.

On information and belief, that all the individual named Defendants had knowledge that a cover up, and 42 U.S.C. 1985(3) conspiracy to cover up the allegations, and accusations perpetrated against the Plaintiff had knowledge of his child being removed from his care and to prevent him from any communication, visit, contact, all had the power to prevent or aid in preventing the coverup and conspiracy from continuing, and neglected or refused to do so.

128. With reasonable diligence, Defendants could have promptly reported the wrongful removal action to superiors. Their failure contributed to the Plaintiff's daughter to be removed from his custody and care and caused the discontinuation of communications and contact that resulted in the Plaintiff seeking therapy due to being emotionally distress since June 14th, 2021, till current and thereby exacerbating his pain and suffering and depriving him of the life and happiness he had before the Defendant's action.

## COUNT 7

### 42 U.S.C. § 1983 SUPERVISORY LIABILITY

130. Paragraphs within this complaint are incorporated by reference as though fully set forth. Defendants Jersey City, County of Hudson, DCF, DCPP, Beyers, Jamet, were, at the relevant times, supervisory personnel of Defendant Daddazio, Pinho, Anderson, Horn, Janiec, King, Tunde, Mcavoy, Booker with oversight responsibility for Daddazio, Pinho, Anderson, Horn,

Janiec, King, Tunde, Mcavoy, and Booker. Jersey City, County of Hudson, DCF, DCPP, Beyers, Jamet, were responsible for training, instruction, supervision, and discipline of their employees, Daddazio, Pinho, Anderson, Horn, Janiec, King, Tunde, Mcavoy, Booker falsified evidence, hindered evidence, false testimonies, false reporting, conspired together to wrongly remove the Plaintiff's daughter from his custody and care, and prevented the Plaintiff to have any communications, visits, and contact with his daughter C.T.

131. It is believed that Defendants Booker, Janiec, Tunde, King, Horn, Anderson Daddazio, Pinho, received complaints about the conduct of their office (DCPP) and other conducts by family members of the child, Jasmine Ortiz, Shaquana Myrick, Francis Ciprian, falsely reporting allegation against the Plaintiff. The Defendants, Booker, Janiec, Tunde, King, Horn, Anderson Daddazio, Pinho all knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these employees had conduct and disciplinary problems that posed a pervasive and unreasonable violation of the Plaintiff's rights.

132. Defendants, Janiec, Horn, Anderson Daddazio, and Pinho, knew, or in the exercises of due diligence would have known that the conduct of Booker displayed against the Plaintiff was likely to occur for the removal of the Plaintiff's daughter.

It is believed Defendants Booker, Janiec, Horn, Anderson Daddazio, Pinho, failed to take preventative and remedial measures to guard against the removal of the Plaintiff's daughter. Defendants, Janiec, Horn, Booker, Tunde, King, Anderson Daddazio, and Pinho, knew, or in the exercises of due diligence would have known that the conduct DCPP displayed against the Plaintiff was likely to occur for the prevention of reunification, visits, communication of the Plaintiff's daughter. It is believed Defendants, Janiec, Horn, Tunde, King, McAvoy, Anderson Daddazio, Pinho, failed to take preventative and remedial measures to guard against depriving the Plaintiff's communication, visits, contact with his daughter.

133. Defendants, Booker, Janiec, Horn, Anderson Daddazio, and Pinho, knew, or in the exercises of due diligence would have known that the conduct of covering up the allegation would deprive the Plaintiff the opportunity to remain in custody and care of his daughter.

Defendants, Booker, Janiec, Tunde, King, McAvoy, Horn, Anderson Daddazio, and Pinho, knew, or in the exercises of due diligence would have known that the conduct of covering up the allegation would deprive the Plaintiff and prevent him from having communication, visit, contact, with his daughter.



134. Had Defendants, Janiec, Horn, Anderson, Pinho, Daddazio, Jamet, Beyer, who all are superiors, supervisor, directors, taken appropriate action, the Plaintiff would not have been injured, due to the removal of his daughter from his care and custody and would be able communicate, visits, and have contacts with his daughter, instead of experiencing such gross negligence, deliberately indifference, or intentional misconduct which directly caused the deprivations suffered by the Plaintiff.

## COUNT 8

### 42 U.S.C. § 1983 CONSPIRACY BETWEEN CITY, COUNTY AND DCF, DCPP

135. Paragraphs within this complaint are incorporated by reference as though fully set forth. Acting jointly over a period of many years, the City and PBA together established policies and customs which allow even the most brazenly brutal officers to believe that they can use excessive force with impunity.

This conspiracy between the City of Jersey City, County of Hudson and the DCF, DCPP is ultimately responsible for, and the proximate and direct cause of the violation of the Plaintiff's rights and the extraordinary injuries that ensued.

### COUNT 9

### PENDENT CLAIM OF GROSS NEGLIGENCE AND NEGLIGENCE

136. Paragraphs within this complaint are incorporated by reference as fully set forth. Defendants, DCF, DCPP, Commissioners, Beyer, Jamet, has been grossly negligent and negligent in the supervision, training, and monitoring of its representatives who consult with, Area Directors, Managers, Supervisors, staff, subcontractors, who are suspected of misconduct, by participating, and witnesses to misconduct by their fellow employees.

The DCF, DCPP, Commissioners, Beyer, Jamet, has a duty to make sure its members and DCPP representatives, who are also Directors, Managers, Supervisors, Caseworkers, staff, do not violate their duties as Directors, Managers, Supervisors, Caseworkers, staff, to report misconduct by Directors, Managers, Supervisors, Caseworkers, staff. The DCF, DCPP, Commissioners, has been grossly negligent and negligent in the instruction and training it provides to its members with respect to their responsibilities to report misconduct by other staff..



137. The DCF, DCPP, Commissioners, Beyer, Jamet, has been on notice for many years that its representatives have played a role in the improper obstruction of misconduct within investigations of DCPP of Jersey City, of Hudson County

The DCF, DCPP, Commissioners, Beyer, Jamet, knew or should have known that its policies and practices have contributed to improper concealment of admissions by DCPP staffs to DCF, DCPP, Commissioners, Beyer, Jamet, representatives, and a "sister & brother hood" being followed by DCPP staffs, whose allegiance is together to cover up crimes and misconduct.

DCF, DCPP, Commissioners, Beyer, Jamet, knew or should have known that its policies and practices, as well as its grossly negligent and negligent supervision and training of their very own employees and representatives, created an atmosphere where most staff that commit frequent misconduct felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and face disciplinary actions against their own employees.

The mistreatment and torture of the previously set forth, and the subsequent cover up of those events, were reasonably foreseeable results of the DCF, DCPP, Commissioners, negligent conduct.

## COUNT 10
### PENDENT CLAIM OF HARRASMENT, THREATS AND MALICE

138. Paragraphs within this complaint are incorporated by reference as though fully set forth. By his actions, as set forth above, Defendants, Tunde, committed aggressive and intimidating acts, including spewing threats against the Plaintiff and pushing him, then cutting off his personal space. This action taken by Tunde against the Plaintiff was unnecessary and excessive. The City is responsible for the excessive and unnecessary threats and pushing by Tunde because It occurred while he was acting in the scope of his employment, specifically in the course of arresting representing the Plaintiff as a caseworker.

139. Defendant Tunde engaged in a series of harassment, malicious, and threatening actions directed towards the Plaintiff, causing the Plaintiff to fear for his safety. These actions included but were not limited to: Defendant Tunde engaged in a series of harassing, malicious, and threatening actions directed towards the Plaintiff, causing the Plaintiff to fear for his safety. These actions included but were not limited to:



Harassment: Defendant Tunde persistently and intentionally engaged in behaviors intended to annoy, disturb, and intimidate the Plaintiff. This included repeated verbal attacks, derogatory remarks, and invasive questioning, creating a hostile environment for the Plaintiff.

140. Malice: Defendant Tunde exhibited a clear and evident display of ill will and hostility towards the Plaintiff. Their actions were driven by a deliberate intent to harm, demean, and cause distress to the Plaintiff without any valid justification or legal basis.

Threats: Defendant Tunde explicitly and implicitly threatened the Plaintiff with physical harm or other forms of violence. These threats were accompanied by aggressive gestures, menacing language, and a complete disregard for the Plaintiff's well-being and personal safety.
As a result of Defendant Tunde's conduct, the Plaintiff experienced significant distress, anxiety, and a reasonable fear for his safety. The Plaintiff's right to a peaceful and secure environment was violated, and their emotional well-being was severely impacted by Defendant Tunde's actions." The action taken by Tunde has caused pain, suffering and emotional distress to the Plaintiff.

## COUNT 11

### HARRASMENT, THREATS

141. I Defendant McAvoy's actions, as described above, involved threats and coercion aimed at obtaining the Plaintiff's urine and DNA specimen. When the Plaintiff initially refused to comply with the Defendant's demand, the Defendant's demeanor became increasingly hostile and agitated. Recognizing that visits and communication with his daughter were at stake, the Plaintiff reluctantly acquiesced to the Defendant's demands, albeit under duress. In an alarming violation of privacy and personal boundaries, the Defendant followed the Plaintiff into the bathroom, disregarding the Plaintiff's right to privacy and dignity. Depriving the Plaintiff of his rightful privacy, the Defendant forced the Plaintiff to expose himself while attempting to collect a urine sample in a cup. This intrusive and humiliating act was perpetrated against the Plaintiff's will and without his informed consent.

142. The Plaintiff's experience during this incident resulted in significant pain, suffering, and emotional distress. Being subjected to such a degrading and invasive act undoubtedly caused the Plaintiff immense psychological harm. The violation of his bodily autonomy and the blatant



disregard for his emotional well-being inflicted lasting emotional trauma upon the Plaintiff.The Defendant's actions not only violated the Plaintiff's rights but also breached the trust that should exist between individuals in a professional capacity. It is essential to recognize that coercion, intimidation, and the infringement of privacy rights are not acceptable means to achieve any objective, especially in a situation as sensitive as reunification with one's child. Given the distressing circumstances and the harm inflicted upon the Plaintiff, it is clear that Defendant McAvoy's actions were both morally and legally wrong. The action taken by McAvoy has caused pain, suffering and emotional distress to the Plaintiff.

**COUNT 12**

**HARRASMENT**

143. Defendant King's repeated actions of writing negative and false reports against the Plaintiff have had severe repercussions, rendering it nearly impossible for the Plaintiff to have meaningful contact, reunification, and communication with his daughter. Throughout this ordeal, Defendant King was well aware that such written allegations would hinder the Plaintiff's chances of reestablishing a bond with his child. This deliberate and malicious conduct highlights a disturbing disregard for the best interests of the child. During a visit to the Plaintiff's home, Defendant King crossed the line by unlawfully recording the Plaintiff's bedroom without his knowledge or consent. This act infringed upon the Plaintiff's privacy rights and created an atmosphere of distrust and intrusion. Additionally, Defendant King subjected the Plaintiff to constant harassment, demonstrating a pattern of behavior that extended beyond the confines of professional responsibility.

144. The Plaintiff's own landlord was not spared from Defendant King's harassment, as false statements were made, challenging the legitimacy of the Plaintiff's residence.

Moreover, Defendant King played a pivotal role in subjecting the Plaintiff to further distress. It was Defendant King who directed the Plaintiff to meet with McAvoy for the purpose of providing urine, without disclosing the underlying reasons for this request. The Plaintiff was coerced and forced into this uncomfortable situation, compelled to expose himself and provide bodily samples under questionable circumstances. These actions were not only invasive but also lacked transparency and proper justification.



145. Furthermore, Defendant King falsely labeled the Plaintiff as non-compliant, deliberately impeding his progress towards reunification with his daughter. It is evident that Defendant King's primary objective was to cause trouble for the Plaintiff, sabotaging any chances of a successful reunion. This intentional interference with the Plaintiff's parental rights and emotional well-being only serves to further demonstrate Defendant King's complete disregard for the best interests of the child involved. The action taken by Tunde has caused pain, suffering and emotional distress to the Plaintiff.

### COUNT 13

### PENDANT CLAIMS OF WRONGFUL REMOVAL AND FALSEY CHARGED

146. Paragraphs within this complaint are incorporated by reference as though fully set forth. The Plaintiff was wrongfully, unlawfully, and unjustifiably charged, deprived of his liberty against his will, and had his daughter C.T. wrongfully removed from his custody and care by Defendants Booker, Janiec, Horn, Anderson, Pinho, Daddazio, DCPP. At all relevant times, these defendants acted forcibly in wrongfully removing C.T. The wrongful, unjustifiable, and unlawful apprehension, and removal and detained was carried out without a warrant. the time of removal.

147. Prior to the child's removal from the Plaintiff's care and custody, a significant event took place on June 8th, 2021. The Family Court of Kings County NY issued an order instructing the child's mother to produce the child to the Office of the NYC Sheriff. Unfortunately, the mother chose to defy the court order by going into hiding, thereby violating the court's directive. Recognizing the gravity of the situation and the mother's evasion of the court order, on June 14th, 2021, the Family Court issued a warrant of arrest for the mother. This legal action was taken as a result of the mother's deliberate non-compliance with the court's order and her attempt to evade law enforcement authorities.

148. What makes the situation even more concerning is the involvement of the defendants in the case. Despite being aware of the court order and the mother's actions, the defendants knowingly harbored the mother and facilitated her evasion of the law. By aiding and abetting the mother in violating the court order, the defendants directly undermined the authority of the court and disregarded the child's best interests.



149. Furthermore, the defendants instructed the mother to bring the child from New York to New Jersey, where the child would be placed in foster care. This deliberate action by the defendants demonstrates their complicity in the evasion of the court order and their active role in facilitating the removal of the child from the Plaintiff's custody.

It is important to note that such actions by the Defendants not only demonstrate a lack of respect for the court's authority but also raise concerns about their commitment to upholding the law and protecting the child's welfare. By knowingly participating in these unlawful activities, the defendants have shown a disregard for the well-being and best interests of the child.

150. The actions of the defendants in this case have not only violated the Plaintiff's rights but also infringed upon constitutional, state, and federal laws. By knowingly and willfully participating in the evasion of a court order, the defendants have demonstrated a disregard for the Plaintiff's rights and well-being.

Under the United States Constitution, individuals have the right to due process, which includes the right to a fair and impartial judicial process. The defendants' actions, in harboring the mother and aiding in the violation of the court order, have undermined the Plaintiff's right to a fair and impartial judicial process by obstructing the enforcement of a valid court order.

151. Additionally, the defendants' actions contravene state and federal laws related to child custody and the enforcement of court orders. Court orders are legally binding and must be adhered to, as they serve to protect the rights and best interests of the child involved. By knowingly facilitating the violation of the court order and assisting in the removal of the child from the Plaintiff's custody, the defendants have acted in direct opposition to these laws.

The Plaintiff, as a result of the defendants' actions, has suffered harm and injury. The violation of rights, constitution, and laws has caused emotional distress, psychological trauma, and potentially disrupted the parent-child relationship between the Plaintiff and the child.

152. Following the wrongful removal of the child, Booker. Janiec, Horn, Anderson, Pinho, Daddazio, DCPP engaged in further misconduct by fabricating charges against the Plaintiff, accusing him of child abuse and neglect. These false allegations were made without any substantiating evidence or proof provided by the defendants.



Fabricating charges of such a serious nature not only tarnishes the Plaintiff's reputation but also has severe legal and personal implications. Accusations of child abuse and neglect can have far-reaching consequences, including the potential loss of parental rights, limitations on visitation or custody, and damage to one's personal and professional standing.

153. By fabricating charges against the Plaintiff, the defendants have engaged in a malicious and harmful act, intentionally causing harm to the Plaintiff's reputation, emotional well-being, and parental rights. Such actions demonstrate a disregard for the principles of fairness, justice, and the best interests of the child involved.

The fabrication of charges not only undermines the integrity of the legal system but also has a profound impact on the lives of those involved. It is essential to hold the defendants accountable for their false accusations, safeguard the Plaintiff's rights, and ensure that justice is served.

The fabrication of false charges and the wrongful removal of his daughter by the Defendants, the Plaintiff has had significant and detrimental effects on his well-being, resulting in injury, emotional distress, and emotional trauma.

**COUNT 14**

**PENDENT CLAIMS OF WRONGFUL REMOVAL AGAINST**

**DCF AND ITS REPRESENTATIVES**

154. Paragraphs within this Complaint are incorporated by reference as though fully set forth. Upon information and belief, Defendant Booker, Janiec, Horn, Anderson, representatives DCF, DCPP consulted with each other and other Defendants, Pinho, Daddazio and other unknown representatives of the DCF, DCPP, Beyers, Jamet, gathered information that would have helped demonstrate that the removal of the Plaintiff's daughter was wrongful, unjustifiable, and unlawful, but nonetheless violated their obligations as to disclose this information.
It is believed that, as a result of the conduct of Defendant DCF, DCPP representatives Pinho, Daddazio, Beyer, Jamet and other unknown representatives of the DCF, DCPP, rapid and effective investigation of the charges and removal of the Plaintiff's child was impeded, and the Plaintiff's charges and the removal of his daughter was unnecessarily and wrongfully conducted.



## COUNT 15
### PENDENT CLAIMS OF INTENTIONAL AND NEGLIGENT INFLICTION
### OF EMOTIONAL DISTRESS

155. In the course of wrongly removing the Plaintiff's child from his custody and care, and falsely charging the Plaintiff with abuse and neglect, the Defendants engaged in a series of actions that constituted intentional and negligent infliction of emotional distress. Their conduct was malicious, willful, and grossly negligent, with the clear intention of causing the Plaintiff to suffer extreme mental and emotional distress, agony, pain, and anxiety.

The Defendants were fully aware of the deliberate nature of their actions and the impact it would have on the Plaintiff's emotional well-being, yet they showed a complete disregard for his welfare. Their deliberate acts of intentional and negligent infliction of emotional distress were meant to inflict severe mental and emotional anguish upon the Plaintiff, with the explicit purpose of intimidating, terrifying, and causing him significant emotional pain.

156. The Defendants' wrongful removal of the Plaintiff's child, coupled with the false charges of abuse and neglect, were part of an extreme and outrageous course of conduct. This course of conduct was designed to deliberately target the Plaintiff and subject him to severe emotional suffering, all in an attempt to undermine his credibility, tarnish his reputation, and deny him his fundamental rights as a parent.

As a direct result of the Defendants' intentional and negligent actions, the Plaintiff has endured immense emotional distress, experiencing significant mental anguish, psychological trauma, and ongoing emotional pain. Their calculated and callous behavior has caused the Plaintiff to endure severe emotional suffering, disrupting his peace of mind, and impacting his overall well-being.

157. The Defendants' actions were not only morally reprehensible, but they also violated the Plaintiff's rights, demonstrated a complete lack of empathy, and exhibited a reckless disregard for his emotional and psychological welfare. Their deliberate infliction of emotional distress represents a clear breach of their duty of care towards the Plaintiff and constitutes an egregious violation of his rights.

## COUNT 16

### PENDENT CLAIMS OF NEGLIGENCE FOR PREVENTING

### VISTATION AND REUNIFICATION



158. Following the wrongful removal of the child from the Plaintiff's custody and care, the Defendants engaged in a deliberate and calculated campaign to hinder any opportunity for the Plaintiff to maintain a relationship with his daughter. They actively worked to prevent visits, communication, and contact between the Plaintiff and his child, disregarding the importance of maintaining family bonds and the emotional well-being of both the Plaintiff and the child.

The Defendants went as far as denying any possibility of reunification between the Plaintiff and his daughter, denying him the chance to rebuild and strengthen their relationship. By depriving the Plaintiff of the opportunity to participate in his daughter's life, including decisions regarding religious, educational, and medical matters, the Defendants demonstrated an outrageous abuse of power.

159. The actions of the Defendants were designed to intentionally inflict pain, suffering, and emotional distress upon the Plaintiff. They sought to isolate him from his child, denying him the fundamental right to be involved in his daughter's upbringing and development. This deliberate interference caused immense emotional turmoil for the Plaintiff, as he was unjustly stripped of his parental role and denied the ability to provide guidance, love, and support to his child.

The Defendants' abuse of power and their deliberate obstruction of the Plaintiff's parental rights constitute a gross violation of his emotional well-being. The resulting emotional distress experienced by the Plaintiff is a direct consequence of the Defendants' actions, which demonstrated a complete lack of empathy and a willingness to inflict harm for their own personal gain.

160. The actions of the Defendants were designed to intentionally inflict pain, suffering, and emotional distress upon the Plaintiff. They sought to isolate him from his child, denying him the fundamental right to be involved in his daughter's upbringing and development. This deliberate

interference caused immense emotional turmoil for the Plaintiff, as he was unjustly stripped of his parental role and denied the ability to provide guidance, love, and support to his child.

The Defendants' abuse of power and their deliberate obstruction of the Plaintiff's parental rights constitute a gross violation of his emotional well-being. The resulting emotional distress experienced by the Plaintiff is a direct consequence of the Defendants' actions, which demonstrated a complete lack of empathy and a willingness to inflict harm for their own personal gain.

## COUNT 17

### PENDENT CLAIM OF PRIMA FACIE TORT

**161. Paragraphs within this complaint are incorporated by reference as though fully set forth.**

**By their actions, as set forth above, Defendants Booker, Tunde, King, McAvoy, Horn, Anderson, inflicted harm upon the Plaintiff, without excuse or justification, out of disinterested malevolence.**

## COUNT 18

## PENDENT CLAIMS OF MAKING AN INJURIOUS FALSE OR FRAUDULENT STATEMENTS AND REPORTS

162 The Defendants, Booker, Janiec, Horn, and Anderson, engaged in a series of injurious and deceitful actions by making false or fraudulent statements and reports regarding the removal of the Plaintiff's daughter. These actions included baseless accusations of abuse and neglect against the Plaintiff, without any substantial evidence to support their claims.

The Defendants deliberately relied on hearsay, speculation, and their own subjective opinions to wrongfully remove the child from the Plaintiff's custody. Their actions were devoid of a factual basis or any genuine concern for the child's well-being. Instead, they chose to fabricate allegations in an attempt to justify their unjust actions.

The consequences of the Defendants' fraudulent statements and reports have been significant and deeply distressing for the Plaintiff. The false accusations of abuse and neglect have tarnished the Plaintiff's reputation and caused immense emotional pain and suffering. The Plaintiff has been subjected to unwarranted scrutiny, stress, and turmoil as a result of the Defendants' actions.

163. Moreover, the Defendants' disregard for the truth and their failure to provide substantiated evidence have further compounded the harm inflicted upon the Plaintiff. Their intentional fabrication of allegations demonstrates a callous disregard for the Plaintiff's rights and well-being.

The Plaintiff has experienced significant emotional distress as a direct result of the Defendants' injurious and fraudulent conduct. The pain and suffering endured by the Plaintiff, both during the unjust removal of his daughter and in the aftermath of the false accusations, have had a profound impact on his mental and emotional well-being. In light of these egregious actions, the Plaintiff seeks appropriate legal recourse to hold the Defendants accountable for their fraudulent statements and reports.

## COUNT 19

## PENDENT CLAIMS OF GROSS NEGLIGENCE AND NEGLIGENCE AND INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

164. The Defendants' gross negligence and negligence in their actions, despite being aware of the corruption and cover-up within their ranks, do not absolve them of their duty to treat the Plaintiff as a human being. The Plaintiff, in his desperate pursuit to maintain a relationship with his daughter, repeatedly pleaded with the Defendants over a hundred times, imploring them to allow him to communicate with his daughter through various means such as supervised visits, therapeutic sessions, or even remote online interactions. However, the Defendants derived pleasure from witnessing the Plaintiff's anguish and chose to torment him further by intentionally denying him any contact with his daughter.

It is worth noting that the Plaintiff's innocence was established through the ruling of the superior court, which unequivocally declared that he did not abuse his daughter. Despite this ruling, the Defendants callously disregarded the Plaintiff's rights and continued to subject him to immense pain and suffering.

165. The Defendants' actions have caused the Plaintiff immeasurable pain and suffering. Their deliberate denial of any contact between the Plaintiff and his daughter demonstrates a complete lack of empathy and a willful disregard for the Plaintiff's emotional well-being. The Defendants' behavior is not only morally reprehensible but also constitutes a clear violation of the Plaintiff's rights, causing severe emotional distress and further exacerbating the harm inflicted upon him.

## COUNT 20
## PENDENT CLAIM- RESPONDEAT SUPERIOR

166. Paragraphs within this complaint are incorporated by reference as though fully set forth. At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their Employment. Consequently, the City and County of Hudson is liable under the doctrine of respondent superior for their tortious actions.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1983

VIOLATION OF FOURTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS

BY DEFENDANTS, THE DIVISION OF CHILD PROTECTION AND PERMANENCY,



167. Plaintiff, incorporates by reference the allegations contained in the above paragraphs, as though fully set forth here.

The Defendants, Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker are charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, training, disciplining and controlling child protective service workers under their command.

168. This responsibility includes promulgation and enforcement of rules, regulations, abide to state laws, federal laws, The Constitution of the United States, New Jersey State Constitution, Civil Rights Act of 1964 and all laws regarding avoidance of threats, harassment, gross negligent, false reporting, malice, abuse of power, and abuse of process in the investigation of allegations of child abuse.

169. On information and belief, Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, failed to promulgate adequate rules and regulations regarding avoidance of threats, harassment, gross negligent, false reporting, malice, abuse of power, abuse of process in the investigation of allegations of child abuse and further failed to instruct, train and discipline in the appropriate methods for handling and investigating allegations of child abuse without resorting to threats, harassment, gross negligent, false reporting, malice, abuse of power, and abuse of process.

170. On information and belief, Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, established and acted their employment, through tacit authorization or explicit instruction a policy or custom of allowing DCPP workers to commit



threats, harassment, gross negligent, false reporting, malice, abuse of power, and abuse of process.

171. That policy was enacted and enforced with deliberate indifference to the constitutional rights and Civil rights of Plaintiff. Plaintiff has been harmed by such policy. Such policy is violative of Plaintiff's due process rights under the Fifth Amendment, which states "guarantees that individuals are entitled to fair procedures and safeguards when facing government action that could deprive them of life, liberty, or property, and Fourteenth Amendment, which states in pertinent part that no person shall "be deprived of life, liberty, or property, without due process of law . . ." and the Fourteenth Amendment, which states in pertinent part that no State may "deprive any person of life, liberty, or property, without due process of law . . .", to the Constitution of the United States of America.

This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to protect individuals of the Eighth Amendment of cruel and unusual punishment and a deprivation of life and liberty under 42 U.S.C. Section 1983, and 1985.

172. WHEREFORE, Plaintiff, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCPP workers to refrain from abuse of process.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

173. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein Defendants acting in concert with each other and other co-conspirators—including other family members of the children, Francis Ciprian, children mothers Jasmine Ortiz, and Shaquana Myrick, and other individuals, reached an agreement among themselves to deprive the Plaintiff of his constitutional rights and civil rights, all as described in the various paragraphs of this Complaint. In so doing, these co-conspirators conspired with the Defendants to accomplish an unlawful



176. The conspiracy between Defendants set forth above, and their actions taken in furtherance thereof were motivated by racial animus. Specifically, working in concert with each other, Defendants targeted to remove children of black families 4 times more than children of white families. According to studies of the foster care system and children welfare throughout state of New Jersey, black children make up just 14 percent of the child population in New Jersey, 41 percent of black children enter foster care system, comparing to white children account for 50 percent of the children population in New Jersey, only 29 percent of white children is removed from their parents to enter foster care in New Jersey. This has been an ongoing disparity of racial discrimination, abuse of power, and unfair treatment since the Department of Children and families formed in 2006. It's not a coincidence that the Defendants targets black children more than white children, its mostly due to that Defendants are fully aware that most black families have far fewer financial resources to fight back against the Defendants when their rights are violated, compared to white families in the state of New Jersey. The education level between white children and black families are appalling.

177. According to the North Jersey Record, the median wealth for white families in New Jersey was $352,000 in 2021. It was only $6,100 for Black families and $7,300 for Latino families. New Jersey remains one of the most segregated states in the nation, particularly as it relates to Education. The Defendant's all form and invisible shield to protect each other when unlawful actions are committed by the Defendants, including violating state laws, federal laws, and civil rights. The City of Jersey City, and Hudson County has no independent investigation agency within their jurisdiction to seek out oversight on employees for disciplinary actions, suspension or previous wrongful acts the way the Internal Affairs Bureau police law enforcement agencies. The Defendants are free to do want ever they choose without any accountability, reprimanding, suspension, and firing. The Defendants are not protected under absolute immunity. Defendants should not be protected under Qualified Immunity due to their actions found to be in violation of clearly established malicious intent to falsify reports, evidence and to violate constitutional rights. 

178. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child

Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000; and

B) Punitive Damages in the amount of $25,000,000.

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and                                               E)

Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

**COUNT IV**

**NEGLIGENT HIRING AND SUPERVISION**

179. Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

Defendants City of Jersey City, County of Hudson and john doe having a duty to completely hire, train, and supervise police and investigative personnel, failed to make reasonable investigation that would have disclosed the employee undesirable characteristics, attribute or tendencies and failed to supervise the action and/or inactions, the acts and omissions of their employees as set forth above. Defendant's neglience hiring, and failure to supervise caused plaintiff to suffer serious emotional injury.

180. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available

to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000 and

B) Punitive Damages in the amount of $50,000,000.    ; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and                                                                  E)

Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C.A. §1983**

**VIOLATION OF FOURTH AMENDMENT**

**FOURTEENTH AMENDMENT**

181. Plaintiff incorporates by reference the allegations contained in the above paragraphs, as though fully set forth here. The Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, are charged with the responsibility and duty to protect and serve the public by properly hiring, supervising, training, disciplining and controlling child protective service workers under their command.  This responsibility includes promulgation and enforcement of rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse.

182. On information and belief, Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, failed to promulgate adequate rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and further failed to instruct, discipline and train in the appropriate methods for handling and investigating allegations of child abuse without resorting to threats and abuse of process. On information and belief, Defendants, City of Jersey City, County of Hudson, Department of Children and Families,



Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, established through tacit authorization or explicit instruction, a policy or custom of allowing DCPP workers to commit abuse of process. That policy was enacted and enforced with deliberate indifference to the constitutional rights of Plaintiff. Plaintiff has been harmed by such policy. Such policy is violative of Plaintiff's due process rights under the Fourteenth Amendment, which states in pertinent part that no person shall "be deprived of life, liberty, or property, without due process of law . . ." and the Fourteenth Amendment, which states in pertinent part that no State may "deprive any person of life, liberty, or property, without due process of law . . .", to the Constitution of the United States of America. This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to cruel and unusual punishment and a deprivation of life and liberty under 42 U.S.C. Section 1983.

183. WHEREFORE, Plaintiff, respectfully demands judgment against the Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, Yasmika Booker, Dorothy King, Rael Tunde, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCPP workers to refrain from abuse of process.

WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000,000; and
B) Punitive Damages in the amount of $25,000,000.   ; and
C) Awarding counsel fees to Plaintiff's legal counsel; and
D) Awarding Costs of Suit; and                                                    E)



Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C.A. §1983 & §1985

### VIOLATION OF SIXTH AMENDMENT AND

### FOURTEENTH AMENDMENT RIGHTS

184. Plaintiff, incorporates by reference the allegations contained in the above paragraphs, as though fully set forth here.

On information and belief, Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, failed to properly hire, supervise, train, discipline, and control DCPP workers under their command, including DCPP Defendants, and failed to insure compliance with the laws, rules, and regulations regarding the use and abuse of process in child abuse investigations; that failure has resulted in a policy or custom of inadequate training, supervision, and/or discipline.

185. On information and belief, Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, custom of failing to properly hire, supervise, train, discipline, and control child protective services workers under their command, including Defendants and their failure to insure compliance with the laws, rules, and regulations prohibiting the abuse of process amounts to deliberate indifference to the rights of persons with whom the child protective services workers come into contact, including the rights of Plaintiff in this case.

Defendants, City of Jersey City, County of Hudson, Department of Children and Families, Christine Norbut Beyer, Laura Jamet, The Division of Child Protection, and Permanency, Kristen Pinho, Ailime Daddazio, Melena Anderson, Tara Horn, Adam Janiec, custom and policy of allowing abuse of process and their failure to properly hire, supervise, train, discipline, and control child protective services workers under their command, including DYFS Defendants, was so reckless or grossly negligent that misconduct involving the abuse of process was inevitable. By virtue of this policy and conduct, Plaintiff's rights under the Sixth Amendment,



which states in pertinent part that persons "shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defense", and Fourteenth Amendment, which states in pertinent part that no State may "deprive any person of life, liberty, or property, without due process of law . . .", to the Constitution of the United States of America and 42 U.S.C. Section 1983, have been violated. Defendants' neglect, aid and refusal to prevent and/or rectify infringement of the constitutional rights of Plaintiff constitute a violation of the Civil Rights Act, Section 1985. For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCPP workers to refrain from abuse of process.

186. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.; and

B) Punitive Damages in the amount of $25,000,000.;     and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and                                                                E)

Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C.A. § 1985

### CONSPIRACY TO VIOLATE CIVIL RIGHTS

187. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

Defendants reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated notwithstanding the constitutional implications of such abuse and the



likelihood such conduct would be repeated. On information and belief, this meeting of the minds can be proven through Defendants incidents of abuse of process and from the repeating of that conduct in an effort to deny the Plaintiff of his rights of due process. These conspiracies constituted and continue to constitute ongoing violations of 42 U.S.C. Section 1985.

WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and

B) Punitive Damages in the amount of $25,000,000.    ; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and                                                                    E)

Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate. 🆔

**SIXTH CLAIM FOR RELIEF**

**42 U.S.C.A. §1983**

**VIOLATION OF DUE PROCESS AND**

**EQUAL PROTECTION RIGHTS BY DEFENDANTS**

188. Plaintiff incorporates by reference the allegations contained in paragraphs above as though fully set forth here.  The acts and/or omission of Defendants in this case were performed under color of law and deprived Plaintiff of her Fifth ("nor be deprived of life, liberty, or property, without due process of law"), Sixth (""shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defense"), Eighth (no "cruel and unusual punishments inflicted"), and Fourteenth Amendment ("deprive any person of life, liberty, or property, without due process of law . . ." and "no state shall ... deny to any person within its jurisdiction the equal protection of the laws") rights under the United States Constitution to due process, compulsory



process, equal protection, and freedom from interference with his fundamental rights as a parent without due process of law.

By virtue of this policy and conduct, Plaintiff's rights under the Sixth Amendment, and Fourteenth Amendment to the Constitution of the United States of America, have been violated. Defendants' acts and omissions furthermore interfered with Plaintiff's fundamental rights to privacy and freedom from excessive interference with raising a family.

Defendants' acts and/or omissions were a moving force behind an objectively unreasonable abuse of process against Plaintiff resulting in the above-referenced constitutional violations. The acts and/or omission of defendants in this case were performed under color of law and deprived Plaintiff of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution to due process, equal protection.

This development, implementation, and carrying out of a policy, practice, procedure, or custom amounts to cruel and unusual punishment and a deprivation of life and liberty under 42 U.S.C. Section 1983.

189. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.; and
B) Punitive Damages in the amount of $25,000,000.   ; and                                    C)
Awarding counsel fees to Plaintiff's legal counsel; and                                      D)
Awarding Costs of Suit; and                                                              E)
Interest; and
F) Damages for Pain and Suffering; and
G) For such other relief as the Court may determine to be appropriate.

## SEVENTH CLAIM FOR RELIEF

### 42 U.S.C.A. §1983 VIOLATION OF FIRST, FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

**190.** Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here. Any and all acts and omissions of Defendants, alleged in this complaint, constitute actions or omissions under the color and pretense of the laws, statutes, ordinances, regulations, customs, and usage of DCPP. Defendants owed a duty to protect and serve the public, including Plaintiff and those similarly situated. Under the circumstances as they existed in this case these Defendants had a duty to not commit abuses of process. Defendants were acting under the color of state law, instituted and followed policies, procedures in a manner that directly resulted in the objectively unreasonable abuse of process against Plaintiff resulting in injury. The Defendants, acting under color of state law, acted with deliberate and unreasonable conduct in violation of clearly established law of which a reasonable child protective services worker should have known. In these above-stated actions, Defendants caused Plaintiff to be deprived of rights, privileges, and immunities, as those rights are secured under the First ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."), Fourth (no person shall "be deprived of life, liberty, or property, without due process of law . . ."), Sixth ("'shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defense"), Eighth (no "cruel and unusual punishments inflicted"), Eighth (no "cruel and unusual punishments inflicted"), and Fourteenth Amendment ("deprive any person of life, liberty, or property, Without due process of law . . ." and "no state shall ... deny to any person within its jurisdiction the equal protection of the laws") Amendments to the United States Constitution.

191. In these above-stated actions, Defendants caused Plaintiff to be deprived of her rights, privileges, and immunities to be free from excessive interference with family relationships and to due process, as those rights are secured under the Fourth and Fourteenth Amendments to the United States Constitution. Defendants also caused Plaintiff to be deprived of his rights to speak truthfully about the Defendants' conduct without fear of reprisal and retaliation in violation of the First Amendment to the United States Constitution.

As a direct and proximate result of the acts and omissions described in this complaint,



Defendants are liable in damages to the Plaintiff for deprivation of his rights under 42 U.S.C.A. §1983.

192. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.; and

B) Punitive Damages in the amount of $25,000,000.; and

C) Awarding counsel fees to Plaintiff's legal counsel; and

D) Awarding Costs of Suit; and                                                    E)

Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

## EIGHTH CLAIM FOR RELIEF

### 42 U.S.C.A. §1983

### RETALIATION FOR PROTECTED ACTIVITY

193. Plaintiff Incorporates by reference the allegations contained in the above paragraphs, above, although fully set forth here.

Plaintiff has pursued avenues of defense of his parental rights and exercise of free speech to preserve his parental rights and made complaints about DCPP's conduct in this case.

This activity by Plaintiff is protected by the United States Constitution, specifically, the First Amendment, which states in pertinent part that "Congress shall make no law . . . abridging the freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances" and Fourteenth Amendment to the Constitution, which states in pertinent part that "no state shall... deny to any person within its jurisdiction the equal protection of the laws."

Defendants' conduct was done solely in retaliation for Plaintiff to exercise of his rights of due process and Plaintiff's exercise of his First Amendment rights in communicating seeking investigation of Defendants' actions. The above-described acts done by Defendants were in excess of any authority granted them by law and were without justification or excuse in law. These acts are a blatant effort to punish Plaintiff for seeking due process relief against the events at issue in this case and for seeking recovery for his damages, and to intimidate him in his litigation of his rights.

Defendants acted willfully, knowingly, and purposely, with the specific intent of depriving Plaintiff of his rights. The acts of Defendants did in fact deny Plaintiff his rights as those rights are secured to Plaintiff in the First and Fourteenth Amendments to the United States Constitution and in 42 U.S.C.A. §1983.

194. As a result of the actions of Defendants in retaliating against Plaintiff in opposition to Defendants' unlawful practices, Plaintiff has been damaged and has incurred great emotional distress, mental anguish, undue hardship, humiliation, inconvenience, and loss of enjoyment of life. As a further direct and proximate result of the above-described unlawful conduct of Defendants, Plaintiff will be required to spend money for legal costs and to secure recovery for damages incurred, in an amount not yet ascertained.

WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, Commissioner of the New Jersey Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.00; and
B) Punitive Damages in the amount of $50,000,000.00; and
C) Awarding counsel fees to Plaintiff's legal counsel; and
D) Awarding Costs of Suit; and
E)
Interest; and
F) Damages for Pain and Suffering; and
G) For such other relief as the Court may determine to be appropriate.

## NINTH CLAIM FOR RELIEF

**New Jersey Civil Rights Act**

**N.J.S.A. 10:6-2**

(New Jersey Civil Rights Act)

195. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth within.

The actions of the Defendants as set forth in the Complaint were intended to and did, in fact, deprive Plaintiffs of his Constitutional rights under the First, Fourth Fifth, Eighth, and Fourteenth Amendment of The Constitution of the United Staes. The actions of the Defendants violated the Plaintiff Civil Rights. The actions of the Defendants violated N.J.S.A 10:6-2, states that Any person who deprives, interferes or attempts to interfere by threats, intimidation or coercion with the exercise or enjoyment by any other person of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State is liable for a civil penalty for each violation. The court or jury as the case may be, we shall determine the appropriate amount of the penalty. Any money collected by the court in payment of a civil penalty shall be conveyed to the State Treasurer for Deposit into the State General Fund.

196. Defendants have proximately caused the Plaintiff to suffer the deprivation of substantive due process, equal protection rights, privileges and/or immunities secured by the Constitution and/or laws of the United States, and substantive rights, privileges or immunities secured by the Constitution of the United States of America and the laws of the State of New Jersey, by their interference with the rights of the Plaintiff.

In addition to the aforementioned Civil Rights and Constitutional Rights violations, the rights the the parents to raise their children according to their own beliefs and values, the rights to make decisions, concerning the care, education, and up bringing of their children, the Defendants have violated Plaintiff's right to Freedom of Speech, Freedom of Unreasonable Search and Seizure, Freedom of Cruel and unusual Punishment, Freedom of Expression, Family Life,  and to Exercise Religion and Right to Privacy under the Constitution of the United States and the Constitution of the State of New Jersey.

By virtue of the foregoing acts, Defendants have violated Plaintiff's rights under Section 10:6-2



of the New Jersey Statutes (the New Jersey Civil Rights Act), as a result which Plaintiffs have been damaged and in result the caused injury to the Plaintiff.

197. WHEREFORE, Plaintiff, Albert Taylor, respectfully demands judgment against the Defendants, The City of Jersey City, Hudson County, Department of Children and Families, The Division of Child Protection and Permanency, Christine Norbut Beyer, Laura Jamet, Ailime Daddazio, Kristen Pinho, Melena Anderson, Tara Horn, Adam Janiec, Dorothy King, Rael Tunde, and Yasmika Booker, jointly and severally, molded by the Court to maximize the financial recovery   available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

A) Damages in the amount of $10,000,000.; and

B) Punitive Damages in the amount of $50,000,000.  ; and C) Awarding counsel fees to Plaintiff's legal counsel; and D) Awarding Costs of Suit; and

E) Interest; and

F) Damages for Pain and Suffering; and

G) For such other relief as the Court may determine to be appropriate.

## COUNT I

## NEW JERSEY CITY RIGHTS ACT

### N.J.S.A. 10:6-1, ET. SEQ

### (Against all defendants)

Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set herein

### TENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### MUNICIPAL LIABILLITY/MONELL CLAIM

198. These failures promulgate proper or adequate rules, regulations, policies, and procedures were committed by case workers, supervisors, managers, area directors, commissioners, staff of DCPP, City of Jersey City and County of Hudson, including the Defendants.

In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendants City of Jersey City and County of Hudson had notice of widespread practices by caseworkers, supervisors, managers, area directors and staff of DCPP



discriminate and wrongly remove children from parent care by falsifying reports of abuse to violate state and federal laws.

199. Defendants City of Jersey City and County of Hudson had notice of widespread practices by caseworkers, supervisors, managers, area directors and staff of DCPP are removing these children from care and preventing any visits, communication, reunification within the families. This form of child separation that is inhumane has been ongoing within the Defendant's practice for decades. Defendants, City of Jersey City and County of Hudson had notice of widespread practices by caseworkers, supervisors, managers, area directors and staff of DCPP have been covering up their wrong doings during these unconstitutional removals for decades. The Defendant's allegiance is for each other, something similar to the Police Blue Code of Silence that was revealed. The Defendants act upon their own protection for each other. The racial disparity of the children being removed are astronomical, however, the City of Jersey, and Hudson County does not investigate or research the reason that black children are being removed from the parents at an alarming 4 to 1 comparing to white children. These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Jersey City and County of Hudson directly encouraged and were thereby the moving force behind the very type of misconduct at issue.

200. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City of Jersey City and County of Hudson, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Jersey City and County of Hudson in that the constitutional violations committed against the Plaintiff and other individuals were committed with the knowledge or approval of persons with final policymaking authority for the City of Jersey City and County of Hudson or were actually committed by persons with such final policymaking authority. Plaintiff's injuries were directly and proximately caused by case workers, supervisors, managers, area directors, commissioners, staff of DCPP, City of Jersey City and County of Hudson, including but not limited to Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.



## ELEVENTH CLAIM FOR RELIEF INTENTIONAL
## INFLICTION OF EMOTIONAL DISTRESS

201. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein. In the manner described in this Complaint, Defendants engaged in extreme and outrageous conduct. Defendants' actions set forth above were rooted in an abuse of power or authority.

Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and serious bodily injury, and with reckless disregard of that probability.

Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others. Defendants' conduct intentionally or recklessly caused severe emotional distress to the Plaintiff

## TWELVETH CLAIM FOR RELIEF NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

202. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein. In the manner described in this Complaint, Defendants were negligent. Plaintiff was impacted by the incidents related to Defendants' negligence. Plaintiff suffered serious emotional distress, emotional trauma of the type that a reasonable person would expect to occur.

As a direct and proximate result of the conduct referenced above, Plaintiff suffered injuries, including emotional distress, emotional trauma, emotional trauma, financial hardship, sleeping disorder, lack of confidence, humiliation, embarrassment.

## THIRTEENTH CLAIM FOR RELIEF NEGLIGENCE

Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein. Defendants had a duty to the Plaintiff to act with ordinary care and prudence so as not to cause harm or injury to the Plaintiff. By engaging in the manner described in this Complaint, Defendants failed to act with ordinary care and breached their duty of care owed to the Plaintiff. As a direct and proximate result of the conduct referenced above, Plaintiff suffered injuries, including emotional distress, emotional trauma, emotional trauma, financial hardship, sleeping disorder, lack of confidence, humiliation, embarrassment. Plaintiff has been receiving counseling and therapy due to the actions of the Defendants.



## FOUTHTEENTH CLAIM FOR RELIEF
## NEGLIGENT HIRING, SUPERVISION,
## AND TRAINING

203. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein. Plaintiff suffered damages from foreseeable misconduct of Employees, Staffs, Case workers, Supervisors, Managers, Supervised by Assistant Area directors, Area directors, Assistant Commissioners, Commissioners, City of Jersey City, County of Hudson supervised by Defendants.

The Defendants' employees in supervisory roles had a duty to properly supervise all staff and employees' actions and to oversee their treatment of the Plaintiff. Defendants blatantly disregarded the high probability that, by permitting their caseworkers and investigators to conspire with individuals, Plaintiff would suffer emotional injuries, emotional distress, sadness, emotional trauma. Defendants were therefore negligent in their non-discretionary duties to supervise individual officers in their agencies.

As a direct and proximate result of the negligent supervision described above, Plaintiff suffered injuries, including emotional distress, sadness, emotional trauma, sleeping disorders, humiliation, embarrassment, lack of confidence, lack of self-esteem, fear of trusting others. Due to the Defendant's actions, the Plaintiff has endured significant emotional injury and mental trauma, necessitating the immediate pursuit of counseling and psychological therapy. The harm inflicted by the Defendants has caused profound emotional distress and has deeply affected the Plaintiff's mental well-being, The severity of the emotional injury suffered by the Plaintiff is such that ongoing therapy and counseling will be required for the foreseeable future, extending throughout the remainder of his life. The Defendant's action has caused lasting psychological harm, and torture, disrupting the Plaintiff's ability to cope with everyday life impeding his overall mental health. The enduring need for therapy underscores the enduring impact of the Defendant's action on the Plaintiff's emotional well-being and underscores the vital importance of ongoing therapy and counseling in order for the plaintiff to heal, recover, and maintain a satisfactory quality of life."

## FIFTHEENTH CLAIM FOR RELIEF
## MALICE AND HARRASMENT

204. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein. In accordance with the details outlined in this Complaint, Defendant caseworker Rael Tunde engaged in intentional and threatening behavior towards the Plaintiff, during an interview on March 21, 2022, that had been conducted at the Defendant's office. The Defendant's actions caused the Plaintiff to fear for his safety without justifiable cause. The Defendant displayed anger towards the Plaintiff upon being served with a subpoena to appear in court as a witness.

205. The Plaintiff was subjected to hostility and aggression from the Defendant, who proceeded to discard the subpoena by throwing it into a garbage bin. The defendant's aggressive conduct was unwarranted, as the Plaintiff did not pose any threats or display any form of hostility towards the Defendant. Moreover, the Defendant, Rael Tunde, exceeded his authority by ordering the Plaintiff to vacate a public government funding building, encroaching upon the Plaintiff's personal space and violating the Plaintiff's constitutional rights. It is important to note that the Defendant is neither a law enforcer officer nor a hired security guard that is hired by DCPP. The Plaintiff managed to record the incident on video using his cellular phone, capturing the moment when the Defendant acted as the aggressor, while the Plaintiff maintained a non-threatening stance. Furthermore, the Defendants, including their supervisors, engaged in a cover up of the incident and submitted a false report alleging that the Plaintiff attempted to assault the Defendant. However, the Defendants failed to provide any evidence to substantiate their baseless accusation. Case worker Tunde continuously and without any substantiating evidence or proof, consistently accused the Plaintiff of child abuse and accusing him of lying.

206. These baseless accusations were repeatedly made during meetings and phone calls, where Tunde would verbally assert the Plaintiff's involvement in abusive behavior towards his children. Despite the absence of any supporting documentation or valid grounds for such allegations, Tunde persistently and unjustly humiliated the plaintiff and subjected him to unnecessary emotional distress, and emotional injury. Caseworker Tunde consistently engaged in the deliberate falsification of reports and the authoring of negative reports against the plaintiff, fully aware that such actions would impede the Plaintiff's ability to reunite with his daughter and unjustly deny him visitation and custody rights. These actions by Tunde constitute a direct violation of the Plaintiff's constitutional rights, civil rights, as well as state and federal laws. Moreover, these actions flagrantly infringed upon the Plaintiff's fundamental rights as a parent, undermining and interfering with the principles of fairness, due process, and the best interest of a



child. By intentionally manipulating reports and perpetrating false narratives, Tunde not alone violated his professional duties, but also exhibits a complete disregard for the Plaintiff's rights and the integrity of having a fair system. The actions described in this count were deliberate and carried out with malice, willfulness, and reckless indifference against the Plaintiff's rights. The

207. Defendants employs such tactics involving the falsification of reports to impede a parent from regaining custody or reunification with his daughter C.T. This alarming practice undermines the integrity of the child welfare system and raises concerns regarding the fairness and objective of decision-making process. Those actions by the Defendants violated the First, Fourth, Fifth, Eighth and Fourteenth Amendment of the Constitution, state and federal laws. As a direct and foreseeable consequence of the threats and physical altercation described above, the Plaintiff has suffered various injuries, including emotional distress, fear for his safety, humiliation, embarrassment, and sadness.

## SIXTHTEENTH CLAIM FOR RELIEF
## RESPONDEAT SUPERIOR

Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein, committing the acts alleged in the preceding paragraphs, the Defendants, Yasmika Booker, Adam Janiec, Rael Tunde, Dorothy King, Tara Horn, Melena Anderson, Ailime Daddazio, Kristen Pinho, Laura Jamet, Christine Norbut Beyer, Commissioner of the New Jersey Department of Children and Families, Department of Children and Families, Division of Children Protection and Permanency, City of Jersey City, County of Hudson County, State of New Jersey or any other governmental entity that acted in the course of their employment and/or under color of state law. They are sued in their official and individual capacity. All Defendants were members and employees of the City of Jersey City and County of Hudson, acting at all relevant times within the scope of their employment and under the color of law. All Defendants, City of Jersey City and County of Hudson are liable as principals for all torts committed by their employees and agents.

## SEVENTHEEN CLAIM FOR RELIEF
## INDEMNIFICATION

208. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein. New Jersey Tort Act law, N.J.S.A. 59:1-1 et sec, requires public entities to pay any tort judgment



for damages for which employees are liable within the scope of their employment activities. Public entities such governmental agencies or entities may be held liable for tortious acts committed by their employees while acting within the scope of their employment. During all times relevant to this complaint, Defendants, Department of Children and Families, Commissioner of The New Jersey Department of Children and Families, Division Of Child Protection and Permanency, Yasmika Booker, Adam Janiec, Rael Tunde, Dorothy King, Tara Horn, Melena Anderson, Ailime Daddazio, Kristen Pinho, Laura Jamet, Christine Norbut Beyer, employees of the City of Jersey City and County of Hudson, respectively, or acted within their capacity for actions within the scope of their employment in committing the acts described herein.

<h3 style="text-align:center">DAMAGE CLAIMS AS AGAINST ALL DEFENDANTS</h3>

A. As a direct and proximate result of the said acts of the Defendants, Plaintiff suffered the following injuries and damages: violation of his right under the First, Fourth, Fifth, Eight, Thirteenth, and Fourteenth Amendments to the Constitution;

B. Loss of physical liberty;

C. Life injuries of, pain and suffering, extreme fear, sadness, emotional trauma, emotional distress requiring the expenditure of money for treatment expected to last the rest of his life;

D. Economic damages including loss of opportunity to work around children. Plaintiff suffered injuries, including emotional distress, emotional trauma, emotional trauma, financial hardship, sleeping disorder, lack of confidence, humiliation, embarrassment, and hardship

E. Humiliation, embarrassment, and injury to Plaintiff's reputation

F. The physical, psychological, and economic consequences of the Defendant's actions continue to date, and upon information and belief, will continue into the future.

<h3 style="text-align:center">CAUSE OF ACTION</h3>
<h3 style="text-align:center">42 USC 1983 CONSPIRACY</h3>
<h3 style="text-align:center">COUNT 1</h3>

209. Paragraph within this complaint of complaint are incorporated by reference as though fully set forth.



The individual defendants, under color of law, conspired with each other, including non-defendant individuals to reach a conclusion, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate Plaintiff's in the free exercise liberty and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution, including the rights; to be free from the international use of unreasonable removal; to be free from unreasonable searches and seizures; to be free from being falsely accuse, to be from false allegations, to associate and speak freely; to have access to and see redress in the courts; and to be free child separation, and the prevention of reunification, visits, and commination of Plaintiff's daughter.

210. DCPP, and DCF, through its caseworkers Booker, supervisors Janiec, Horn, manager Anderson, area directors Pinho, and Daddazio was a willful participant in joint action with each other acting under color of law. It is believed that the Booker, supervisors Janiec, Horn, manager Anderson, area directors Pinho, Daddazio, Tunde, and King, participant in the conspiracy to further the purpose and goals of the agencies, including the goal of maintaining the 'code of protect each other."

It was part of the conspiracy that the Defendant, Booker, Tunde, and King did, commit the act of threats, harassing, and menacing the Plaintiff during meetings. In furtherance of the conspiracy and to cover up the false allegations of neglect and abuse made by the Booker, Janiec, Horn Anderson.

Defendants, engaged in the following:

    A.  Wrongful removal of the Plaintiff's daughter

    B.  Fabricated and contrived the allegation against the Plaintiff.

    C.  Although they were aware of the allegations against the Plaintiff, Defendants, are required to investigated it immediately, Defendants, deliberately suppressed the truth; and

    D.  Submitted false reports, false statements, false testimony to support and collaborated the fabricated allegations and charges lodged against the Plaintiff, and to insulate, Booker, Janiec, Horn, Tunde, King, Anderson, Pinho, and Daddazio, from administrative disciplinary sanctions.

**42 U.S.C. 1983**

### Wrongful Removal of a Child
### COUNT 2

211. Paragraphs within this complaint are incorporated by reference as though fully set forth. By their conduct and color of law, Defendant's Booker, Janiec, Horn, Anderson, Pinho, and Daddazio, deprived the Plaintiff of his constitutional rights, civil rights, New Jersey Constitutional rights by the removal of the Plaintiff's daughter from his custody and care.

### 42 U.S.C. 1983
### Violation of Children and Parent relationship
### COUNT 3
### 42 U.S.C. 1983
### Violation of Court Orders
### COUNT 4

212 Paragraphs within this complaint are incorporated by reference as though fully set forth. By their conduct and color of law, Defendant's Booker, Janiec, Horn, Anderson, Pinho, and Daddazio, deprived the Plaintiff of his constitutional rights, civil rights, New Jersey Constitutional rights by violating the court order of the Family Court of Kings County NY, that was issued on June 8th, 2021, ordering the mother to produce the child C.T. to NYC Sherriff Department. The Defendants above all knew that the there was an order issued by the Family Court of Kings County, however, the Defendants all conspired to disobey the court order and instructed the mother to travel from NY to Jersey City to produce the child to foster care of NJ. The Defendant's knew the child wasn't at Imminent Danger to cause a removal, the Defendant's knew the child had been in the care of the mother since June 4th, 2021, however, on June 14th

2021, Defendants, Booker, Janiec, Horn, Anderson, Pinho, and Daddazio, falsified reports and statement to induce a removal from the mother who was safely caring for her child within her custody.

Defendants, Booker, Janiec, Horn, Anderson, Pinho, and Daddazio, falsified reports and violated Court order to induce the removal of the child.

### INJUNCTIVE RELIEF



213. In my complaint, I respectfully request that the Defendants immediately return the child to the Plaintiff's custody. It is my sincere belief that it is in the best interest of the child to be reunited with their loving and caring parent.

Furthermore, I am seeking injunctive relief from the court to compel the Defendants to provide all relevant documents, including but not limited to reports, texts, emails, and any other correspondence pertaining to the removal of the child. These documents are crucial for establishing the truth, uncovering any potential misconduct or wrongdoing, and ensuring transparency in this matter.

I firmly believe that access to these documents is essential in building a strong and just case, and it will enable me to effectively challenge the Defendants' actions and the basis for the removal of the child. The information contained within these documents is vital for presenting an accurate and comprehensive account of the events that have transpired.

Therefore, I respectfully request that the court grants the injunctive relief sought and orders the Defendants to promptly produce all relevant documents, texts, emails, and any other evidence related to the removal of the child. This will allow for a fair and thorough examination of the circumstances surrounding the case and contribute to the ultimate goal of reuniting the child with their rightful custodial parent.

By providing access to these materials, the Defendants will demonstrate their commitment to transparency, accountability, and the pursuit of justice. It is my hope that the court will grant this request and ensure a just resolution to this distressing situation.

## PUNITIVE DAMAGES

214. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

In addition to compensatory damages, Plaintiff hereby make a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiff's civil rights, as alleged in this complaint.

The acts and omissions of Defendants in this case were so gross and culpable in nature that they



213. In my complaint, I respectfully request that the Defendants immediately return the child to the Plaintiff's custody. It is my sincere belief that it is in the best interest of the child to be reunited with their loving and caring parent.

Furthermore, I am seeking injunctive relief from the court to compel the Defendants to provide all relevant documents, including but not limited to reports, texts, emails, and any other correspondence pertaining to the removal of the child. These documents are crucial for establishing the truth, uncovering any potential misconduct or wrongdoing, and ensuring transparency in this matter.

I firmly believe that access to these documents is essential in building a strong and just case, and it will enable me to effectively challenge the Defendants' actions and the basis for the removal of the child. The information contained within these documents is vital for presenting an accurate and comprehensive account of the events that have transpired.

Therefore, I respectfully request that the court grants the injunctive relief sought and orders the Defendants to promptly produce all relevant documents, texts, emails, and any other evidence related to the removal of the child. This will allow for a fair and thorough examination of the circumstances surrounding the case and contribute to the ultimate goal of reuniting the child with their rightful custodial parent.

By providing access to these materials, the Defendants will demonstrate their commitment to transparency, accountability, and the pursuit of justice. It is my hope that the court will grant this request and ensure a just resolution to this distressing situation.

## PUNITIVE DAMAGES

214. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

In addition to compensatory damages, Plaintiff hereby make a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiff's civil rights, as alleged in this complaint.

The acts and omissions of Defendants in this case were so gross and culpable in nature that they



constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including Plaintiff.

215. Defendants committed the acts and omissions alleged in this complaint and subjected Plaintiff to improper treatment that caused Plaintiff to suffer emotional distress so severe that no person should be expected to endure it.

Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case.

This instance of reckless and callous indifference to Plaintiff's safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that must not be tolerated.

## ATTORNEY'S FEES

Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

216. As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A. §1988 for those violations covered by the Civil Rights Act.

## DAMAGES

217. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

The acts and omissions of Defendants as set forth above have resulted in injury to Plaintiffs.

By virtue of these injuries, Plaintiff is entitled to the following damages from all defendants:

Expenses associated with defense of Albert Taylor Parental rights; and Mental and Emotional pain and suffering; and

- c) Humiliation and sociological distress; and

- d) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring DCPP workers to refrain from abuse of power and process

- e) Compensatory Damages in the amount of $10,000,000. and

- f) Punitive damages in $25,000,000 or a reasonable amount that is sufficient to

- adequately punish all defendants and to deter future conduct of the type alleged in this

- complaint; and

- The costs of this action, attorney's fees, and such other and further relief as this Court

- deems just and proper.

  As a direct and proximate result of the said acts of the Defendants, Mr. Taylor suffered the following injuries and damages:

- a. Violation of his rights under the First, Fourth, Fifth, Eight, Thirteenth, and Fourteenth Amendment to the Constitution;

- b. Loss of physical liberty, enjoyment, and the pursuant to happiness.

- c. injuries, pain and suffering, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life. d. Economic damages including loss of income; and

- e. Humiliation, embarrassment, and injury to reputation. f. The physical, psychological, and economic consequences of the defendants' actions continue to date, and upon information and belief, will continue into the future.

218. This is an action for damages sustained against Albert Taylor, citizen of the State of New York of the United States of America, by a child protection agency of the City of Jersey City, Hudson County, Department of Children and Families, Division of Child Protection and Permanency, who unlawfully violated State laws, and violated Federal laws, violated the Constitution of The United States, violated the civil rights of the Plaintiff, by abusing their power by unlawfully removing the Plaintiff's child C.T. from his custody and care of the Plaintiffs by



falsifying evidence to pursuant to N.J.S.A. 9:6-8.21 and deprive the Plaintiff of any communications, visits, and contact pertaining to his nine-year-old daughter C.T. since June14th, 2021, which violates N.J.S.A. 9:17-39, N.J.S.A. 30:4C-11.

**JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

219. Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court

for the District of New Jersey, Newark

Pro'se

CERTIFICATION

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration is contemplated, and I am not aware of any other person who should be joined in this matter

**PRAYER FOR RELIEF**

220. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each Defendants, and award him all relief allowed by law, including but not limited to the following:

A. All appropriate relief at law and equity; B. For compensatory damages;

C. For punitive damages;

    A. For pretrial interest;

    B. For attorney's fees and costs;

    C. Equitable and injunctive relief to prevent future violations of the law; and

    D. An order awarding such other and further relief as the Court deems just and

    E. equitable.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

221. Respectfully submitted this 14th day of June 2023.

Dated: June 14th 2023 _____ _____ Albert Taylor (Pro'se)

## DEFENDANT LIST

Defendant# 1) The City of Jersey City   280 Grove St.   Jersey City N.J 07302

Defendant# 2) The County of Hudson   595 Newark Ave Jersey City NJ 07306

Defendant# 3) Department of Children and Families 50 State Street P.O. Box 717 Trenton NJ 08625

Defendant# 4) Commissioner of the New Jersey Department of Children and Families

50 State Street P.O. Box 717 Trenton NJ 08625

Defendant# 5) Division of Child Protection and Permanency   438 Summit Ave Jersey City NJ 07306

Defendant# 6) Yasmika Booker          438 Summit Ave Jersey City NJ 07306

Defendant# 7) Rael Tunde          438 Summit Ave Jersey City NJ 07306

Defendant# 8) Timothy McAvoy          438 Summit Ave Jersey City NJ 07306

Defendant# 9) Dorothy King          438 Summit Ave Jersey City NJ 07306

Defendant# 10) Adam Janiec           438 Summit Ave Jersey City NJ 07306

Defendant#11) Melena Anderson     438 Summit Ave Jersey City NJ 07306

Defendant#12) Ailime Daddazio     Gateway Plaza 2nd Floor 1 Harmon Meadow Blvd Secaucus NJ 07094

Defendant#12) Kristen Pinho       Gateway Plaza 2nd Floor 1 Harmon Meadow Blvd Secaucus NJ 07094

71

Defendant#13) Laura Jamet        50 State Street P.O. Box 717 Trenton NJ 08625

Defendant# 14) Christine Norbut Beyer      50 State Street P.O. Box 717 Trenton NJ 08625

CERTIFICATION OF SERVICE

I Albert Taylor certify that a copy of my motion was served

by        June   on  06/  /2023                                    upon:

(Name of Opposing Party)

(Address of Opposing Party)

Name (Signature)

17 Vandalia 6E
Brooklyn Ny 11239
6464749170